# Marshall *versus* The Commonwealth, to the use of Mayor, &c., of Allegheny City.

1. The councils of Allegheny contracted for the grading of a street at a given price, the cost of the grading to be assessed according to a special law on the landholders on the street.   Councils had the right to revoke the contract, and enter into a new one at a higher rate, without the consent of the landholders.

2. In grading the street it became necessary to construct a sewer: *Held*, that the cost of the sewer was properly included in the assessment for grading the street.

3. An Act of Assembly enacted that the "laws, ordinances, regulations

and constitutions," passed by the councils of Allegheny, which were not published and recorded in the recorder's office, should "be null and void." Councils passed a resolution to revoke a contract of grading streets, and to enter into a new contract on different terms; the resolution was not published nor recorded. *Held,* that the resolution was within the meaning of the act, and therefore inoperative.

November 12th 1868.    Before THOMPSON, C. J., READ and SHARSWOOD, JJ.    AGNEW and WILLIAMS, JJ., absent.

Error to the District Court of *Allegheny county :* No. 97, to October and November Term 1868.

This was a scire facias on a lien, filed August 21st 1867, for grading, &c., Ridge street, in Allegheny City, issued September 20th 1867, at the suit of the Commonwealth to the use of the Mayor, &c., of said city, against A. Marshall.

By an Act of Assembly of April 13th 1840, Pamph. L. 307, incorporating the city of Allegheny, it is enacted "that in order that a knowledge of said laws, ordinances, regulations and constitutions may at all times be had and obtained, and the publication thereof at all times be known; such * * of them as·shall not be published in one or more newspapers," or otherwise as the councils may direct and within fifteen days after their passage, and recorded in the recorder's office within thirty days after their passage, "shall be null and void," &c.    By an Act of April 5th 1849, Pamph. L. 341, the councils of Allegheny City are authorized by ordinance to grade, pave and repair, &c., any street, &c., in said city, and to levy a special tax to pay the expenses of the same by an equal assessment on the feet front bounding and abutting on such street, &c.    By an Act of May 1st 1861, the same councils are authorized to cause sewers to be constructed in every street, &c., and for the payment of the expenses "to make assessment on all property * * likely to be benefited thereby, fairly and equitably, in proportion to the benefit received."

On the 5th of November the councils passed an ordinance directing the committee on streets to invite proposals for grading Ridge street, and contract therefor with the lowest and best bidder.    For the purpose of defraying the expense they directed that a tax should be assessed on the lots bounding on the street in proportion to the feet front, &c., and when the grading shall have been finished to collect such tax according to law.    On the 1st of December 1863 the street committee agreed with James Hastings for the grading of Ridge street at 35 cents per cubic yard, and took his bond with John Hutchinson as surety, for the performance of his contract.

The plaintiff gave in evidence the agreement and bond as above stated; that the work under the contract was suspended about April 1st 1864 on account of the great rise in the price of labor, occasioned by the rebellion, and that to complete the contract at

[Marshall *v.* Mayor, &c., of Allegheny City.]

the prices in it would involve a loss to the contractor of $10,000. He also gave evidence that by order of the street committee a sewer had been constructed in addition to the grading; that if the sewer had not been put in, one side of the street would have been overflowed with water, and that the sewer was necessary. Hastings asked the councils for an advance on his contract price, and on the 12th of April 1866 the councils, by the action of both branches, passed a resolution authorizing a new contract with Hastings for the grading, at 35 cents per cubic foot for what had then been done, and 56 cents per cubic foot for that remaining to be done. This resolution was neither published nor recorded. In pursuance of this resolution an agreement was entered into on the 13th of July 1866, between the councils and Hastings and James Johnston for completing the grading; under this agreement it was finished. The amount chargeable to the defendant under the last contract, including the sewer, was $607.60.

The defendant gave evidence in answer to the plaintiff's case. He submitted the following points:—

1. The second contract was illegal, inoperative and void, because the same was made without authority of law.

2. The councils of the city of Allegheny having entered into a contract for the grading of Ridge street, and taken sufficient security for the performance of the contract from the contractor, had no power or authority to cancel or revoke the same without the consent of the property-owners in interest.

3. The second contract was illegal and void, because the resolution authorizing the same was not published or recorded, as required by law.

4. The cost of the sewer embraced in the statement and sought to be recovered in this proceeding is improperly embraced therein.

The court (Williams, J.), after stating the evidence, charged:—

* * * "Is the defendant, then, liable for the whole amount assessed upon his property in this case for the grading of Ridge street?

"The defendant does not deny, but admits his liability for a portion of said assessment, viz., for so much thereof as would be equivalent to his proportion of the costs of grading the street at the price stipulated to be paid in the first contract; but he denies his liability for any other or greater amount. He contends, first, that the councils had no authority to cancel or revoke the first contract without the consent of the property-owners in interest; second, that the second contract was illegal, inoperative and void, because it was made without authority of law, and because the resolution authorizing it was not published or recorded as required by law; third, that the cost of the culvert or sewer is improperly embraced in the assessment.

"The questions of law raised by the defendant's points will be

reserved for the further consideration of the court in banc, in case the same should become necessary by the finding of the jury. But for the present the court instruct the jury *pro formâ* that the councils of the city had the right to cancel and revoke the first contract, and to authorize the street committee to make the second contract, if the jury believe from the evidence that the councils acted in good faith in so doing; and that the price at which the work was re-let by the new contract was fair and reasonable, considering the advanced prices, and the then cost of labor. If the jury find that there was no fraud or collusion between the contractor and the councils, but that the latter acted in good faith in modifying the original contract by the contract of July 30th 1866, and that the price of grading stipulated therein to be paid was fair and reasonable, considering the advance in the price of labor, &c., then the jury will find the whole amount of the plaintiff's claim with interest, subject to the opinion of the court upon the questions of law reserved for the court in banc. The jury will also find the amount or proportion of the expense of grading the street, and of the cost of the culvert, with which defendant's lot is chargeable at thirty-five cents per cubic yard for the grading as provided by the first contract, and defendant's portion of the cost of the culvert. So that judgment can be entered for either said amounts, including or excluding the cost of the culvert, as the court may find the law to be."

The jury found "That the city of Allegheny acted in good faith in modifying the original contract of December 1st 1863, by the new contract of July 3d 1866, and that the price, to wit, 56 cents per cubic yard, at which the work was re-let, under the new contract, was fair and reasonable, in view of the advanced prices and the then cost of labor, and therefore we find for the plaintiff the sum of $607.60, with interest from June 27th 1867, subject to the opinion of the court on the questions of law reserved. We further find the cost of work, including the culvert with which the defendant is chargeable at 35 cents per yard, to be $444.49, with interest from June 27th 1867, and that defendant's proportion of said culvert is $8.89. Judgment to be entered for $607.60 or $444.49, or for either of said sums, less cost of culvert $8.89 with interest as aforesaid, as the court shall determine the law upon the questions reserved."

Judge Williams afterwards delivered the opinion of the District Court on the reserved questions, holding that the councils had power to make the original contract, that the resolution authorizing the new contract was not such "a law, ordinance, regulation or constitution" as required publication and recording, and that the cost of the culvert was properly embraced in the assessment: and directed judgment to be entered for the plaintiff for $607.60, with interest.

The defendant removed the case to the Supreme Court, and filed four assignments of error, to wit, the overruling of his four points respectively.

*S. & S. C. Schoyer* and *T. M. Marshall*, for plaintiff in error.

*M. W. Acheson* (with whom was *J. C. McCombs*), for defendants in error.—The councils could release part of the claim and enter into a new contract: Phila. & W. C. Railroad *v.* Hickman, 4 Casey 328 ; Schenley *et ux. v.* Commonwealth for use of the City of Allegheny, 12 Id. 59.

The opinion of the court was delivered, January 11th 1869, by
READ, J.—The City of Allegheny was incorporated by an Act of Assembly, passed the 13th of April 1840, Pamph. L. 303, by which, in the 7th and 8th sections, modelled after the act to incorporate the City of Philadelphia, the legislative power of the corporation was vested in the Select and Common Councils of the city, and the laws, ordinances, regulations and constitutions passed by them were required to be published and recorded in the office of the recorder of deeds in and for the county of Allegheny.

By the Act of the 5th of April 1849, Pamph. L. 341–2, and 8th of April 1851, § 3, Pamph. L. 372, the councils were empowered by ordinances to grade any street, lane, alley or sidewalk, or any parts thereof within the corporate limits, and to levy and collect a special tax for defraying the costs and expenses of the same by an equal assessment on the feet front.

The 1st, 2d and 3d sections of the Act of the 30th of March 1852, Pamph. L. 204–5, prescribe the manner of collecting the expenses of grading. By an ordinance passed the 5th of November 1863, the committee on streets were directed to invite and receive proposals for the grading of Ridge street from Irwin avenue to Chartiers street, in the First Ward, and to contract therefor with the lowest and best bidder or bidders, at their discretion. On the 1st of December 1863 the city corporation entered into an agreement with James Hastings, to whom the contract had been awarded, at 35 cents per cubic yard, to be completed on or before the 1st of December 1864. The contractor proceeded with the work until obliged to suspend operations by reason of the great and sudden increase in the price and cost of labor, occasioned by the war. One of the causes assigned for the rise of wages was so many leaving the city to go into the army.

On the 13th of July 1866 the city corporation entered into a new contract with James Hastings and James Johnston, for the remaining grading, which was to be completed on the 15th of November 1866, at 56 cents per cubic yard for that part thereby

agreed to be graded. The grading theretofore done on said street to be paid for at the first price of 35 cents per cubic yard.

The jury found "that the city of Allegheny acted in good faith in modifying the original contract of December 1st 1863 by the new contract of July 1866, and that the price, to wit, 56 cents per cubic yard, at which the work was re-let under the new contract, was fair and reasonable in view of the advanced prices and the cost of labor, and therefore we find for the plaintiff the sum of $607.60, with interest from June 27th 1867."

The 1st and 2d points, upon which the defendant's counsel asked the court to charge the jury, and the overruling of which forms the 1st and 2d specifications of error, raise the simple question whether the councils had the power to cancel or revoke the original contract? If they had, then clearly they had the right to make the second.

Upon this point we think the reasoning of the learned judge is unanswerable. "Were they," said he, "absolutely bound to sue the contractor and bail, for a breach of the contract? Was it not in their power to compromise the matter on fair and reasonable terms? If the city was under no obligation to do the work by contract—if it might have hired men to do it by the day, as is ruled in Schenley and Wife *v.* The Commonwealth for the use of the City of Allegheny, 12 Casey 59, why might not the councils rescind a contract for grading, which the contractor was unable to perform on account of an unexpected contingency, if they believed he was equitably entitled to relief, and enter into a new contract for the performance of the work on fair and reasonable terms without consulting the lot-owners? It seems to me the councils were under no imperative necessity to sue the contractor and his surety for a breach of the contract, and exhaust their legal remedies against them, but that they might compromise the matter by rescinding the contract and entering into a new one, on fair and reasonable terms, if they acted in good faith, and without any fraud or collusion." This is common sense and good law.

As to the 4th error assigned, we agree with the learned judge that what is termed a sewer was a necessary part of the grading, and was properly embraced in the statement.

The 3d error assigned is that the court overruled the 3d point, viz., that the second contract was illegal and void, because the resolution authorizing the same was not published or recorded as required by law.

The fact appears to be as stated in the assignment of error. The resolution which was passed by both the Select and Common Councils was in these words: "Resolved, That the Committee on Streets be and they are hereby authorized to enter into a new contract with James Hastings for the grading

of Ridge street, at 35 cents per cubic yard, for that part of the work already done, and 56 cents per cubic yard for that part yet to be done."

It was in fact, therefore, a joint resolution rescinding the action under the 1st section of the ordinance of the 5th day of November 1863, and the contract of the 1st of December 1863, and authorizing directly another contract upon other terms, and, in fact, repealing the 1st section of the said ordinance. This joint resolution was neither published nor recorded according to the act of incorporation, and the question is, was it necessary?

The original power to grade is by ordinance, and it would seem therefore proper that any alteration or repeal of any part of the ordinance should be effected by the same method, or its equivalent, a joint resolution, published and recorded in due form.

The 16th section of the Act of the 11th of March 1789, incorporating the city of Philadelphia, employs nearly the same language as the original city charter of 1701, granted by William Penn, in conferring the power of passing by-laws, and this section has formed the groundwork of the 7th section of the Act of 1840, incorporating the City of Allegheny. The Select and Common Councils are vested with authority "to make, ordain, constitute and establish such and so many laws, ordinances, regutions and constitutions"—"as shall be necessary or convenient for the government and welfare of the said city." Each of these words are used to describe by-laws, and are to be found in our law-books; such as "ordinances or constitutions," 2 Kyd 97; "regulation or by-law," 19 L. J. N. S. Q. B. 135; "laws," 2 Kyd 98; "rule, order and ordinances," Grant on Corporations, p. 76, note 1.

These by-laws can be ordained only by the two bodies, and whether the shape be that of an ordinance or a joint resolution, they are laws, ordinances, regulations and constitutions, and they must be published and recorded under the provisions of the 9th section. The 10th section makes it the duty of the mayor to promulgate the laws, rules and ordinances of the corporation.

By the Constitution of the United States, and by our own state Constitution, every order, resolution or vote to which the concurrence of both Houses is necessary, takes exactly the same course as a bill; and a joint resolution passed according to the rules prescribed by those instruments, has all the effect of law.

Reason, therefore, and analogy required that this joint resolution should have been published and recorded agreeably to the provisions of the 8th section.

But this omission can and should be supplied by immediate legislative action, as was done in Schenley v. Commonwealth, 12 Casey 59, which was held by this court to be not only constitutional, but obviously just and proper. In that case the ordinance

[Marshall *v.* Mayor, &c., of Allegheny City.]

to grade and pave was passed the 21st of June 1855, which was published but not recorded until after the passage of the Act of Assembly of 2d February 1859, to wit, on the 9th of that month. This act was passed after the institution of the suit, and is to be found in the Pamphlet Laws of 1859, p. 20. Judge Cooley, in his Treatise on Constitutional Limitations, p. 361, says: " As a general rule every state has complete control over the remedies which it shall afford to parties in its courts." " It may give a new and additional remedy for a right already in existence."

Since writing the foregoing I have been referred to Sower *v.* City of Philadelphia, 11 Casey 236, in which, delivering the opinion of the court, I said : " The next objection that the order for opening was by joint resolution, and not by ordinance, seems to be disposed of by uniform legislative usage in the city government, and by a fair analogy to the constitutional practice of the state legislature. Both joint resolutions and ordinances are passed by both councils, and approved by the mayor ; and by the 17th and 18th sections of the Act of 11th of March 1789, the laws, ordinances, regulations and constitutions of the city must be published and recorded ; and by the 44th section of the Consolidation Act, the laws and ordinances of the city must be published for the information of the citizens. It is a legislative act, a law, and it matters not whether it be called a joint resolution or an ordinance." See Kepner *v.* Commonwealth, 4 Wright 124.

In Harrison *v.* The City, 3 Phila. Rep. 138, Hare, J., expressed the same opinion, where the joint resolution was not approved and signed by the mayor, nor passed by the required two-thirds.

Judgment reversed, and *venire de novo* awarded.

THOMPSON, C. J., dissented.