## J. H. Schenck, Dominick Howard and R. J. Gallagher *v.* The Burgess, Town Council, Borough of Olyphant and Fanny M. Massey, Appellants.

| | |
|---|---|
| 181 | 191 |
| 187 | 543 |
| 181 | 191 |
| 202 | [3]167 |
| 181 | 191 |
| 206 | [0]191 |
| 181 | 191 |
| 25 SC | [5]397 |
| 181 | 191 |
| 38SC | [2]447 |

*Boroughs—Municipal contracts—Advertisement—Acts of April 3, 1851 and May 23, 1893.*

Under the Acts of April 3, 1851, P. L. 322, and May 23, 1893, P. L. 113, the plans and specifications of a borough contract, if not essential parts of the ordinance authorizing the contract, need not be advertised.

The publication of the minute details of construction contained in specifications would impose an unreasonable burden on boroughs and would serve no useful purpose; the publication of plans and models would often be utterly impracticable. Such plans and specifications should be carefully preserved in the proper office and open to the inspection of all persons concerned. Per FELL, J.

*Municipalities—Boroughs—Ordinances—Resolutions.*

A permanent regulation in a municipal government may be adopted by what is designated as a resolution, and if so intended, and passed with the same formalities, will have the same force and effect as an ordinance.

A resolution of council is but another name for an ordinance, and if it be a legislative act it is immaterial whether it be called a resolution or an ordinance.

While legislation by borough councils may be by ordinance or resolution, the requirements which are essential to the validity of an ordinance must be observed in the passage, approval, recording and publication of a resolution where the action of councils is legislative.

A direction that enactments, regulations, ordinances and other general laws shall be recorded and advertised does not include resolutions which are not in their nature legislative, and which do not take the place of ordinances.

Ordinances of a borough authorized the construction of electric light works. They fixed in detail the terms of the contracts to be entered into, the kind and character of the work to be done, the time of completion and the penalty for nonfulfilment. The ordinances were duly recorded and advertised. Bids were subsequently accepted and the contracts were awarded by resolution of councils, but the resolution was not recorded in the ordinance book, and not advertised. *Held,* that the resolution was merely a ministerial act and not a legislative one, and its advertisement was not necessary.

*Equity—Equity practice—Amendment—Boroughs—Municipal indebtedness.*

A bill in equity was filed to have certain contracts of a borough for the erection of an electric light plant declared void. The bill raised the question of the good faith of council in awarding the contracts and the regu-

larity and legality of the ordinances upon which the contracts were based, but it did not question the right of the borough to issue bonds. An answer was filed denying every allegation of fraud and irregularity. A replication was filed to the answer, testimony was taken, arguments made, and the case was awaiting decision, when the court, more than a year after the bill was filed, allowed it to be amended, so as to raise the question as to the legality of the increase of the borough debt. No opportunity was given to the borough or the bondholders to be heard on the allegations in the amendment. At the time the amendment was allowed no affidavit was filed that the application was not made for the purpose of vexation or delay, or that the matter of the amendment could not with reasonable diligence have been sooner introduced into the bill as required by Equity Rule, 10. *Held*, (1) that the amendment shifted the ground of action by introducing an entirely new question which was not an *integral part* of the subject-matter of the bill; (2) that it was error to allow the amendment.

Argued Feb. 26, 1897.    Appeal, No. 601, Jan. T., 1896, and No. 53, Jan. T., 1897, by defendants, from decree of C. P. Lackawanna Co., Sept. T., 1895, No. 13, on bill in equity. Before WILLIAMS, MCCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Bill in equity to declare borough contracts illegal.

The facts appear by the opinion of the Supreme Court.

The court below in an opinion by GUNSTER, J., entered the following decree :

Now, November 30, 1896, after hearing and determination of the above case, it is adjudged and decreed as follows :

1. That the contracts entered into by the borough of Olyphant for the construction of an electric light plant are void for want of authority, it being an increase of the borough debt to more than two per cent of the assessed valuation of property within the borough, and being without the assent of the electors of the borough, as provided by law; and, further, because such contracts were not authorized by a valid ordinance.

2. The issue and sale of $15,000 of borough bonds during the year 1896 was illegal and void for the reason that such issue was an increase of the borough debt above two per cent of the assessed valuation of property therein, without authority of law.

3. The borough of Olyphant, her officers, agents and employees are restrained from paying money on the aforesaid illegal

contracts and from paying the principal or interest of the said issue of $15,000 of bonds, from any payments on matters alleged in the bill in this case whereby the debt of the borough of Olyphant will be increased to an amount greater than two per cent of the assessed value of her taxable property, without a valid consent of the electors thereof as provided by law.

4. The defendant, the borough of Olyphant, shall pay the costs.

5. At the request of the intervening bondholders it is further ordered, adjudged and decreed that the treasurer of said borough and all the officers thereof be and they are hereby restrained from disbursing the proceeds of said bonds or any portion thereof, now in their hands, until the further order of this court.

*Errors assigned* among others were (1) in allowing amendment to plaintiffs' bill; (21–24) the first four paragraphs of the decree, quoting them.

*Charles P. O'Malley, John Hampton Barnes* and *Everett Warren*, with them *Henry A. Knapp* and *George Tucker Bispham*, for appellants.—A borough has the right to maintain an electric light plant: Act of May 20, 1891, P. L. 90; Linn v. Chambersburg Borough, 160 Pa. 511.

The object of printing and advertising ordinances is that the citizens of the municipality may have knowledge of the actions of the council. Ordinances such as these are adequate notice to all persons interested of what is being done. The plans and specifications are filed with the secretary, and this fact being published they are accessible to all persons.

When the mode of acting is not specified, it may be done in any proper mode, nor is municipal action to be very strictly criticised. It is sufficient if the law has been substantially followed: Howard's App., 162 Pa. 374. In the case of Millvale Borough, Appeal of Howard et al., 162 Pa. 374, a new resolution was passed awarding the contracts for the construction of a waterworks.

The publication and advertisement of the resolution awarding the contracts was unnecessary.

The portion of the act of 1893 referring to publication of or-

dinances and resolutions is unconstitutional: Com. v. Frantz, .135 Pa. 389; La Plume Borough v. Gardner, 148 Pa. 192; Com. v. Samuels, 163 Pa. 283; Com. v. Severn, 164 Pa. 462; Gackenbach v. Lehigh County, 166 Pa. 448; Pierie v. Phila., 139 Pa. 573; In re Road in Phœnixville, 109 Pa. 44; Borough of Milford v. Milford Water Co., 124 Pa. 610; Wilkes-Barre v. Wyoming Historical Society, 134 Pa. 616.

A resolution is the proper form for such acts of councils as are temporary or ministerial in character, and do not require executive approval: Shaub v. Lancaster City, 156 Pa. 362; Barton v. City of Pittsburg, 4 Brewster's Rep. 373.

The case of Kepner v. Com., 40 Pa. 124, does not decide that a resolution should be published and advertised.

The amendment was improperly allowed: Equity Rules, Rule 10, sec. 52; Seymour v. Long Dock Co., 17 N. J. Eq. 169; Thorn v. Germand, 4 Johns. Chan. 363; 1 Beach on Modern Equity Prac., 190; Brotzman v. Brotzman, 1 Northampton Co. Rep. 13; McCullough's App., 1 Monaghan's Sup. Ct. Cases, 700; Tatham v. Ramey, 82 Pa. 130; Jones v. Wadsworth, 33 Leg. Int. 416; O'Malley v. O'Malley, 11 W. N. C. 39; Whitmarsh v. Campbell, 2 Paige, 67; Rodgers v. Rodgers, 1 Paige, 424; Bowen v. Idley, 6 Paige, 46; 1 Daniel's Chanc. Pleading & Prac. 402; Potts v. Murphy, 10 Phila. 509; Brightly's Eq., sec. 824; Smith's Chan. Prac. 299; 2 Johns. Chan. Rep. 426.

The amendment introduced a new cause of action: Dougherty v. Murphy, 10 Phila. 509; Crawford County v. Bank, 164 Pa. 109; Oglesby v. Attrill, 14 Fed. Rep. 214; Land Co. v. Elkins, 20 Fed. Rep. 545; Dodd v. Astor, 2 Barb. Ch. 395; Clyde v. R. R., 59 Fed. Rep. 394; Wilhelm's App., 79 Pa. 120; 1 Beach Modern Equity Practice, 191; Shephard v. Merrill, 3 Johns. Chan. 423; Verplanc v. Mercantile Ins. Co., 1 Ed. Chan. 47; Jones v. Davenport, 45 N. J. Eq. 77.

The plaintiffs are estopped from seeking to invalidate their own acts: 2 Story's Eq. Jur., sec. 1546; Barton v. City of Pittsburg, 4 Brewster, 373; Tash v. Adams, 64 Mass. 253; Hilliard on Injunctions, 34, sec. 43.

The act of 1895 does not apply in this case.

Laws cannot attach themselves to conduct antecedent to the creation of the laws themselves: Potter's Dwarris on Statutes and Constitutions, 164; Ely v. Holton, 15 N. Y. 595.

A law that is enacted after a case has arisen can be no part of it: Menges v. Dentler, 33 Pa. 495; McCabe v. Emerson, 18 Pa. 111; Reiser v. Saving Fund Assn., 39 Pa. 137; Palairet's App., 67 Pa. 479; Haley v. Phila., 68 Pa. 45; Taylor v. Mitchell, 57 Pa. 209; Neff's App., 21 Pa. 243; Fisher v. Farley, 23 Pa. 501; Becker's App., 27 Pa. 52; Bedford v. Shilling, 4 Serg. & Rawle, 403; Dewart v. Purdy, 29 Pa. 113; White v. Crawford, 84 Pa. 436; Giles v. Giles, 22 Minn. 348; Levering v. Shockey, 100 Ind. 558; State v. Hill, 32 Minn. 275; Henderson v. State, 96 Ind. 437; State v. Stein, 13 Neb. 529; County of Moultrie v. Fairfield, 105 U. S. 370; County of Clay v. Society for Savings, 104 U. S. 579.

*I. H. Burns*, for appellees.—It is due to the tax payers, whom the borough councils are supposed to represent, that all the preliminary proceedings looking to the construction of a plant should be characterized by the utmost good faith and openness of proceeding. Those who are finally required to pay the bills should at least have the privilege of knowing what their agents are doing and what they themselves are to get for their money: Com. v. Beaver Borough, 171 Pa. 543; Verona Borough's App., 108 Pa. 83.

No new cause of action was brought into the case by the amendment.

The question in this case, so far as concerns the validity of the borough bonds, is exactly on all fours with Senor v. Borough of Ephrata, 176 Pa. 80, with one exception. In that case the vote to authorize the increase of debt was taken after the passage of the Act of April 18, 1895, P. L. 36, while in this case the vote was taken about two months before the passage of the above act, but the increase of the debt was not made until several months after the act became a law.

Those who purchased the Olyphant bonds had notice of the facts in the county clerk's office, and of the law as it is written on the statute books. These were the places to look as to the legality of the bonds, and there could not be any deception or misrepresentation.

OPINION BY MR. JUSTICE FELL, May 10, 1897:

No attempt was made to sustain the allegations of fraud in

awarding the contracts, and at the final hearing of the case the only questions which arose under the original bill related to the validity of the contracts entered into by the borough for the erection of electric light works.

The ordinances which provided for the construction of the different parts of the works were all duly passed by the borough council, approved by the burgess, recorded in the ordinance book and advertised; but the plans and specifications referred to in the ordinances as "attached hereto" were not recorded or advertised. The ordinances provided for advertisements for sealed proposals, but they made no provision for the awarding of contracts. The bids were accepted and the contracts awarded by resolutions duly passed, approved by the burgess and entered upon the minutes, but not recorded in the ordinance book and not advertised. The objections to the validity of the contracts were based upon the ground that neither the plans and specifications attached to the ordinances nor the resolutions awarding the contracts were recorded in the ordinance book or advertised. The learned judge found that the ordinances had not gone into effect for the reasons that the specifications had not been recorded and advertised, and that the resolutions awarding the contracts, being legislative in their character and not recorded and advertised, conferred no authority for making the contracts.

Neither the general borough Act of April 3, 1851, P. L. 322, under which the borough of Olyphant was incorporated, nor the Act of May 23, 1893, P. L. 113, requires anything but an "enactment, regulation, ordinance or other general law" to be recorded and advertised. The plans and specifications, although referred to in the ordinances, were not in terms made a part of them. The specifications at the time of the hearing were fully recorded, and an offer to show that the plans were of such a character that it was impossible to record or advertise them was overruled. Unless for the purpose of notice to the public of the action of council the plans and specifications must be considered as essential parts of the ordinances, they do not come within the requirements of either act. In some cases they may be so considered, but in this we think not. If they had been referred to as on file in the office of the clerk, burgess or engineer of the borough, it could scarcely be contended that the acts applied to them. The publication of the minute details of con-

struction contained in specifications would impose an unreasonable burden on boroughs and would serve no useful purpose; the publication of plans and models would often be utterly impracticable. Such plans and specifications should be carefully preserved in the proper office and open to the inspection of all persons concerned. This was done, and everyone interested had the means of information. In Glading v. Frick, 88 Pa. 460, it was held that the act of April 3, 1872, which provided that when a contract for the construction of a building was recorded within fifteen days of its execution the building should be liable to the contractor alone for the work done and materials furnished, was fully complied with by recording the contract without the specifications. It was said in the opinion in that case, in speaking of the specifications: " A peculiar state of facts ought to exist to make the recording of auxiliary documents like these indispensable. It is possible to conceive of specifications that would contain plans, drafts or models of a kind to render their transfer to the record impossible, or at least intolerably inconvenient. . . . The rule that annuls the effect of an unrecorded agreement, which forms part of a single transaction, has no room to operate in such a case as this."

The word " ordinances " as used in either act includes a resolution providing for the construction of public works. " An ordinance is defined to be the enactment of a permanent rule of conduct or government, while a resolution is an order of council of a special or temporary character. This distinction, however, is not adhered to. A permanent regulation in a municipal government may be adopted by what is designated as a resolution, and if so intended will have the same force and effect as an ordinance if passed with the same formalities. What the borough cannot do by the latter it cannot do by the former." Trickett's Pennsylvania Borough Law, sec. 106. A resolution of council is but another name for an ordinance, and if it be a legislative act it is immaterial whether it be called a resolution or an ordinance: Sower v. Philadelphia, 35 Pa. 231; Kepner v. Commonwealth, 40 Pa. 130; Waln v. Philadelphia, 99 Pa. 330. A resolution renewing a loan was held in Kepner v. Commonwealth, supra, to require the approval of the mayor; and in Marshall v. Mayor of Allegheny, 59 Pa. 455, a resolution not published and recorded was held ineffectual to revoke

a contract for grading and to authorize a new contract therefor. While legislation by borough councils may be by ordinance or resolution, the requirements which are essential to the validity of an ordinance must be observed in the passage, approval, recording and publication of resolutions where the action of councils is legislative.

But a direction that enactments, regulations, ordinances and other general laws shall be recorded and advertised does not apply to all acts of council. It does not include resolutions which are not in their nature legislative and which do not take the place of ordinances. The learned judge says in his opinion: " I find nothing in the law requiring resolutions accepting bids and awarding contracts to be recorded in the ordinance book and advertised, providing the authority to accept bids and award contracts has been properly conferred." But he finds the resolutions invalid, for failure to record and advertise, because they were the only action of council conferring the authority, and were therefore legislative enactments. The prior ordinances providing for the erection of the works were three in number. By them it was " enacted and ordained " that buildings should be constructed, that an electric light plant should be purchased, that a steam plant to supply power for the manufacture of electricity should be purchased; and the secretary of the borough was directed to advertise for sealed proposals, and the burgess was directed to appoint suitable persons to superintend the construction of the building and to inspect the machinery, etc. These were legislative acts providing for the construction of public works, and were the creation of the authority for that purpose. If the ordinances had authorized the burgess or some other officer or a committee of council to open the bids and award the contracts, nothing would have remained to have been done by council. The ordinances fixed in detail the terms of the contracts to be entered into, the kind and character of the work to be done, the time of completion, the penalty for non-fulfillment, and in fact everything except the price to be paid. What was left to be done was an executive or ministerial act, not a legislative one, and it was done by the whole body. It was to receive the bids and award the contracts—acts which could have been done by anyone to whom authority had been given by ordinance. What necessity can there be that council

by ordinance should authorize itself to take the successive steps to carry into effect that which it had already enacted and ordained should be done? The awarding of a contract thus previously authorized could be done by resolution duly passed and approved by the burgess and entered upon the minutes. The prior ordinances were a full and complete authorization.

The only remaining objection to the contracts is based upon the ground that the increase of the debt was illegal. This objection was not raised by the original bill, and we are of the opinion that the amendment was improperly allowed. The purpose of the bill was to have certain contracts for the erection of electric light works declared void. The bill called into question the good faith of council in awarding the contracts, and the regularity and legality of the ordinances upon which the contracts were based, but it did not question the right of the borough to issue bonds. The purpose of the amendment was to have the increase of the borough debt declared illegal, and thus to strike down the security of the bondholders. The application for leave to amend was made more than a year after the bill was filed. In the meantime an answer and a replication had been filed, the testimony had all been offered, the argument made, and the case had been fully heard and was awaiting decision. No opportunity was ever given to the borough or the bondholders to be heard on the allegations in the amendment.

The application for leave to amend was not made in accordance with the equity rules; it was too late, and it introduced a new and independent cause of action. No affidavit was filed that the application was not made for the purpose of vexation or delay, or that the matter of the amendment could not with reasonable diligence have been sooner introduced into the bill, as required by Rule 10. The introduction of the amendment shifted the ground of action by introducing an entirely new question, the means by which the money was raised. The bill was to declare the contracts void because of alleged defects in the ordinances intended to authorize them. If the plaintiffs were entitled to the relief sought, they could have obtained it under the original bill. The subject-matter of the amendment was not an integral part of the subject-matter of the bill. The validity of the contracts did not necessarily depend upon the validity of the bonds. Their invalidity was alleged upon

entirely different grounds. The answer introduced no new matter unknown to the plaintiffs when the bill was filed, and it cannot be said accurately that it introduced any new matter. The complaint of the bill was that the contracts had been fraudulently made and that the ordinances were defective. Every allegation of fraud and irregularity was denied by the answer. There was no attempt to prove fraud, and at the hearing the question was narrowed to the technical objections to the ordinances. The fact that a vote to increase the debt had been taken and an ordinance providing for the issue of bonds passed was set up in the answer not as a separate ground of defense, but in reciting the proceedings by the borough council which had led up to the question at issue. The application for leave to amend was evidently an afterthought based upon a new ground of objection to the contracts suggested by the decision in Sener et al. v. Ephrata Borough, 176 Pa. 80, and the amendment was allowed at a time and in a manner which denied the appellants an opportunity to be heard.

The right of the plaintiffs, who as members of council participated in all the proceedings and by their votes approved all that was done, or of any one under the circumstances disclosed by the testimony, to object now to the validity of the bonds may well be doubted.

The decree is reversed and set aside. As there was ground for the objections to the contracts when the bill was filed, which were removed by the subsequent action of council in passing the ordinances and entering into new contracts, the costs should be divided equally between the plaintiffs and the borough of Olyphant. And it is so ordered.