His Honor, 'CHARLES P. CLAIBORNE,
rendered the opinion and decree of the Court, as follows:
*430 This is a redhibitory action. Plaintiff alleges that on April 10th, 1912, he purchased of defendant for $117.50 a horse represented to be sound; that immediately after-wards the horse became sick and unfit for use, and that it died on April 26th, 1912, sixteen days after the purchase; that an autopsy of the horse disclosed that it died of pulmonary tuberculosis; that the horse was suffering' from said disease at the time of the sale and prior thereto and constituted an inherent vice or defect. He claims the return of the price and $10 for medical services to the horse.
Defendant pleaded a general denial.
There was judgment for plaintiff and defendant has appealed.
Plaintiff testifies that he bought the horse from defendant on April 12th, 1912, for $117.50; that it was sold to him as Sound; that after he bought the horse, he worked him for fpurteen days in a regular ice wagon weighing about 1,600 pounds loaded with about one ton of ice delivering the ice from 4725 Tchoupitoulas uptown to Broadway and from Magazine to St. Charles; that the horse worked all right and seemed all right with the exception of his stomach that jumped a little bit; at the end of the fourteenth day the horse took sick; he sent for Dr. Rexford within two hours thereafter; about twenty-four hours after he died; it was on a Friday evening; the post mortem examination was held on Sunday morning at 11 o’clock; he was not present; he did not notify Mr. Feitel that the horse was sick; Feitel was told of it on Sunday.
Dr. W. H. Rexford is a veterinary surgeon of 35 years practice; he made the post mortem examination of this horse; he arrived at the conclusion that the horse died of *431 tuberculosis of long standing; when be was first called in, Ms examination showed that the horse was suffering from laminitis, commonly called founder; the symptoms of founder have no relation whatever to tuberculosis; the cause of the horse’s death was very surprising to Mm because horses do not die of laminitis; in his ante mortem examination he saw an acute case of founder and as his death was peculiar and unusual in laminitis he determined on a post mortem; he knew that the horse could not have died of the disease he saw him suffering from; pleural pneumonia is quite common among horses; but this horse did not die of pneumonia; the symptoms of tuberculosis in horses are emaciation of the body, sometimes coughing, and inability to stand labor; there was no apparent symptom that the horse was suffering from tuberculosis; he was treating Mm for laminitis; he does not think it is very difficult to diagnose tuberculosis in horses if they are affected; in opening the chest he found lesions and open abscesses and the pleura was affected; there are also abscesses in pleural pneumonia; but the abscesses in this case did not appear to him to be caused by pneumonia; a horse could contract pneumonia in a very short time and die in a short time; it is possible for a horse to have tuberculosis and to suffer from some extreme irritation of the lungs or ¡a cold that might produce death immediately; he did not make a microscopic nor chemical examination of the horse, but simply superficial, and he cannot say that there were any tubercles in the horse’s lungs; the lesions indicated that the horse had lung trouble of long standing that had heialed up at least six months to a year probably; he is satisfied the horse did not die of pneumonia; he thinks the lungs were affected so badly that he took laminitis, and he could not *432 stand on his feet; one lnng was pretty near all gone; they were in terrible bad shape.
Flaintiff had no other evidence.
Defendant, on the other hand, examined Dr.. R. W. Tuck, a veterinary inspector of the United States Bureau of Animal Industry for 14 years; he has charge of the meat inspection, ante and post mortem, investigates contagions and infectious diseases in the Gulf States; tuberculosis in horses is very pare; he has read of one or two cases; he has heard Dr. Rexford testify; the symptoms of tuberculosis in horses are the lesions; to confirm the opinion that a horse has tuberculosis it is necessary that there should be tubercles in the lungs; in case of an animal dying of tuberculosis of the lungs that would be so extremely existing that you could not miss it; a microscopic examination is not necessary to an expert; in the oa.se of tuberculosis of a horse the lungs would be probably three to four times their normal size and would contain a large rttnning mass of cheezy substance; if it was an acute case the tubercles would be very small from a pin point to a pea, of a yellowish color making a cross section of the lungs.
•Dr. Hamlet Moore, a veterinary surgeon since fifteen years, has held many post mortem examinations; has never had a case of tuberculosis in a horse and knows of no one who had; has heard one or two very .authentic reports of them; doubts that this horse died of tuberculosis ; would not swear he did not, but'believes he did not; if he made ia. post mortem examination .and found no tubercles he would be willing to swear that the horse did not die of tuberculosis; he has heard Dr. Rexford testify and from his testimony that there was an absence of tubercles he would conclude that there was no tuberculosis and that from the length of the time the horse was sick *433 it was á physical impossibility; a microscopical examination is not necessary because he has seen lesions in horned cattle as large as u bean and they are very apparent in the neck.
Dr. T. J. Douglas is a veterinary surgen for the last 12 years; has never seen a case of tuberculosis in a horse; has read of a few cases which were not sufficient to make him believe it; a horse cannot contract tuberculosis and die within 24 hours,; it is not possible that the horse could have worked 14 days before his death and hauled a ton of ice if he was sick; a post mortem is absolutely necessary to conclude that a horse died of tuberculosis; tuberculosis is very plain, and a microscopic examination is not necessary; if a horse died of tuberculosis he must have had it for a long time; he could not work with it; tuberculosis is a progressive disease with slow progress; all animals are susceptible to it and when they approach death they cannot work; he does not.think horses have tuberculosis.
As the disease of which the horse died did not disclose itself within three days immediately following the sale, there is no presumption that it existed before the sale, and the burden of proof is upon the plaintiff to establish it. C. C., 2530 (2508).
Dr. Rexford is the only witness to testify that the horse died of tuberculosis. He draws that conclusion from the only fact that he saw lesions and abscesses in the horse’s lungs. He saw no other symptoms of any kind. Yet he admits that lesions and abscesses exist in cases of pleural pneumonia. Pitted against this diagnosis are the more irresistible facts that tuberculosis in horses is very rare, that the disease is slow and progressive and that animals afflicted with it are emaciated and weak. In this case the horse died suddenly without premonition, and he *434 looked sound and in good condition during fourteen days anterior to his death and up to his death, and worked hard during all those days hauling around an ice wagon weighing when loaded 3600 pounds. The lungs of the horse under autopsy revealed no tubercles. Tuberculosis without tubercles is like a shadow without an object. The doctors for the defense testify that there cannot be tuberculosis without tubercles. Dr Rexford testifies that one of the lungs was almost gone, while Dr. Tuck swears that in the case of tuberculosis the lungs would be three or four times their normal size; tuberculosis is easily detected and cannot be mistaken.
Opinion and decree, May 15th, 1916.
We think that the stern facts of the case are more convincing than even expert testimony and overcome the testimony of Dr. Rexford, or at least create a doubt de-. structive of plaintiff’s demand. Add to this the impossibility of contradicting the Doctor in what he saw and the fact that the defendant was not notified and was not given an opportunity to be present at the autopsy.
The law and the jurisprudence of the case were examined by us in the case of Parique v. Ortolano, No. 6508, decided on January 17th, 1916. We adhere to the views therein expressed.
The principle of the superior force of affirmative testimony over negative has no place here. It applies to witnesses who swear affirmatively to the existence of a fact and not to such as give opinions or conclusions.
45 A., 331; 40 A., 741; 38 A., 955; 37 A., 258; 36 A., 84; 33 A., 799, 800.
It is therefore ordered that the judgment herein be reversed and annulled and that plaintiff’s demand be rejected at his cost in both Courts.