# Samuel Orr v. Carnegie Natural Gas Company, Appellant.

*Oil and gas lines—Evidence—Price demanded by owner.*

Under the general rule of evidence that everything said or done by a party, touching the matter in issue, may be presented in evidence against him, it is admissible to show in a damage case for taking the right of way for a pipe line, the price, apart from any purpose of compromise, demanded by the plaintiff.

*Oil and gas lines—Evidence—Opinions as to value.*

Under the rules of evidence, governing the admission of opinions as to the value of property, which have been frequently stated by the Supreme Court and which are plain and not difficult of application, the following rulings of the trial judge were correct.

1. The evidence was admissible where the witness testified that he knew the property for many years and that his judgment of its value was based on his knowledge of its conditions, quality and utility, and of such sales as were made of similar properties in the neighborhood.

2. Evidence is properly rejected where the witness himself stated and his testimony showed that he was not acquainted with the value of land in the neighborhood of the farm in question.

3. Where the witness had been rejected under the above (2d) ruling on a former day during the trial there was no abuse of discretion in refusing to permit him to be examined on the following day, no reason being given by the offer nor stated by the witness why he should be again examined.

*Practice, C. P.—Trial—Irrelevant suggestions to witness.*

An assignment of error will not be sustained based on permitting a witness to answer a question entirely proper in itself under directions to " answer as indicated in the question " although irrelevant suggestions had been made by counsel to the witness while in the witness box.

It not being understood that approval is expressed of the method of conversation permitted and it being further indicated that the trial judge very properly might have cautioned the witness to have based his answer on his own knowledge rather than upon the suggestions of counsel.

Argued May 13, 1896. Appeal, No. 41, May T., 1896, by defendant, from judgment of C. P. Armstrong Co., March T., 1895, No. 125, on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Appeal from award of jury of view assessing damages for the taking of a right of way for a natural gas pipe line under right of eminent domain. Before RAYBURN, P. J.

On the trial Samuel Orr, the plaintiff, being on the stand under cross-examination, the court rejected the following evidence.

Mr. Neale: We propose to ask the witness what he offered to take from the defendant company for the right of way before his land was entered, as a measure of damages fixed by himself.

Mr. Leason: It is objected to as incompetent and irrelevant. Any proposition made in the way of settlement of damages not accepted and before any damage was done upon the premises, is not evidence.

The Court: We will sustain the objection and give you an exception and seal a bill.

Mr. Neale: The same proposition is stated, expressly excepting from that proposition any offer made by him for the purpose of compromise, but the question is directed to the fact that the actual price demanded by the plaintiff from the defendant for the occupation of the land.

Mr. Leason: The proposition being in substance the same as the former one the same objection is made to it.

The Court: And the same ruling. [1]

The court permitted under objection the following witnesses to testify as to the value of land.

Samuel Dibble, a witness called for the plaintiff, testified that he was a farmer living about a mile from plaintiff's farm which he had known about seven years; that he was familiar with the improvements on the farm. Did not know number of acres; that the farm was a rolling one. Witness was then asked:

Q. Mr. Dibble, from your knowledge, then, of this farm, what would you say would be the market value previous to the laying of this line?

Mr. Patton: We object; the witness has not shown sufficient knowledge of the selling or buying prices of land in the neighborhood to be able to fix a value.

The Court: Yes, you ought to get from the witness whether or not he knows the value of lands in that neighborhood.

Mr. Whitworth: Do you know the market value of land in that community? A. I have noticed some few sales there; I bought a farm there some years ago, and as far as I can see the land sells near about the same as it did then, according to the quality and the improvements.

Witness was then permitted to give his opinion as to the value of land and was asked:

Q. Have you any knowledge either from observation or personal experience of the effect of pipe lines on farm land?

Mr. Patton: We object to anything except this farm.

The Court: You can ask the question.

A. I have had. Q. Now, what would you say that this farm by reason of the laying of this line through it would depreciate in value per acre?

Mr. Patton: We object to the witness answering the question for the reason that he has not shown any facts sufficient to qualify him to answer the question.

The Court: We think he had better state his knowledge of this matter, the facts connected with it, and then from those facts or that knowledge, give us his conclusion as to the value.

Mr. Whitworth: You have said, Mr. Dibble, that you have had some observation or personal experience as to the effect of pipe lines upon farming lands, now will you state what effect they have? A. I have been offered farm after farm after the Gas Company—

Mr. Patton: We object, except the farms in the neighborhood. We object unless the witness testifies to farms in the neighborhood.

The Court: We will sustain the objection as far as it refers to the value of lands in the neighborhoods other than the neighborhood where this farm lies, but we allow the witness to be interrogated as to his knowledge of the effect of laying gas pipes on farm lands.

Mr. Whitworth: Just state from your observation and personal experience, what effect the laying of pipe lines has upon farming lands upon this farm? A. It has a depreciating effect. Q. What is it? A. It decreases the value and hurts the farm where it is followed to any extent—injures the farming; it leaves

the farm torn up.   Q. From your knowledge of the injury and the damage which the laying of a large gas line does to farming property, and from your personal examination of the Orr farm, what damage, if any, has been done to the Orr farm by the laying of this pipe line and the taking of this right of way through it.

Mr. Patton : That is objected to because the witness has not shown sufficient knowledge nor has he stated any facts that would qualify him to express an opinion as to the amount of damage sustained by Mr. Orr.

The Court : We will overrule the objection, admit the evidence and give you an exception and seal a bill.

A. I would conclude that at least $5.00 an acre on this farm. [2]

William Henderson, a witness called for the plaintiff, testified that he lived near the Orr farm, had frequently been upon it, had known it since boyhood, that it was an average farm as to productiveness, that from his knowledge of the farm and of other farms which had changed hands he would value it at from $45.00 to $60.00 per acre previous to laying the pipe line, that he had been along the line, found it sunk in parts and in parts piled up about two feet; especially in the orchard.   He was then asked :

Q. What would you say, Mr. Henderson, that this land has depreciated per acre by reason of the laying of this line ?   By reason of the laying of the pipe line and the taking of the right of way and the rights incident thereto ?

Mr. Patton : We object to it.   The witness has not shown sufficient knowledge or stated sufficient facts to justify him in expressing an opinion as to the depreciation of the land.

The Court : We will overrule the objection and give you an exception and seal a bill.

A. I would say $5.00 per acre.

Mr. Whitworth : You take that much then off the value of the farm ?   A. Yes, sir.   Q. Do you know how many acres there are ?   A. I don't know really only what I have been told. [3]

Jacob Clark, a witness called for plaintiff, gave similiar testimony under same objection and with same ruling. [4]

The evidence of Samuel Culp was admitted as follows :

Q. When they take the width of the pipe out is it going to be refilled or left an open ditch? A. We don't know. Q. That would make it quite a difference to price of it, either with an open ditch or a well filled ditch? A. They have a right to occupy it forever if they wish to, or as long as their charter exists, or to abandon it if they please, there is nothing definite on that, and when they abandon it they can leave it as they please.

Mr. Patton: We object to the last statement made by the counsel because the bond contemplates leaving the ground in good condition. If there was any negligent condition that would be a separate remedy.

The Court: Let the question be read to the witness and let him answer as indicated by the question there. We will give you an exception and seal a bill.

Mr. Leason: Mr. Culp, what would be the difference in the market value, a fair market value, of the land before this pipe line was laid and after? A. Well, I would say there would be a difference of anywhere from $900 to $1,000. [5]

Samuel Brown, called by defendant, was not permitted to give his opinion, having testified as follows:

Q. How far do you live from the Samuel Orr farm? A. It is about between three and four miles, I judge. Q. Are you acquainted with that farm? A. Yes, sir, I have known that farm for quite a number of years. Q. Have you been through it and over it a number of times in your lifetime? A. I have been along the roads very frequently. Q. You can state if you are acquainted with the value of lands in the neighborhood of the Orr farm? A. Well, that is a pretty hard thing for us to put the value of lands, it depends a good deal on circumstances; there has been very little. land sold through that country. Q. Are you acquainted with the general value of it—what people are holding it at? A. Well, people will hold it up— well, I would say from $35.00 to $40.00 an acre. Q. Just state whether you are acquainted with the value of lands in that neighborhood? A. I would say I was not. Q. You know what lands are held at by people there, do you? A. Well, there is very little chance to know that at the present time. Q. Do you know what people are asking for their land there? A. That is a very hard question to answer at the present time out there

in our country.   Q. The question is not what the specific value is but what the general value of land is, as near as you could estimate it.   Do you know, generally speaking, what people value the land at?   A. Well, I would say $40.00 an acre. Q. Do you know what the value of this Samuel Orr tract is? A. I would place it on an average—

Mr. Leason: That is not right.

The Court: He must state first that he is acquainted with the value of land.

Mr. Patton: Mr. Brown, you may state whether you know the general value of land in the neighborhood of Mr. Orr's? A. Well, I don't know that.   Q. Do you know about what people are asking for their land in that neighborhood?   A. No, sir, we have no land market you see in that country, none except this gas excitement.   Q. Independent of that, you are acquainted, are you, with the value of lands in your own neighborhood where you live?   A. Well, all I would have to go by would be the valuation of assessors, etc.; as I said, we have no land market there, some man may ask quite a big price for land and if he could get it it is all right, but there have been no sales made of land there of any account of late years.   Q. Do you know the value of your own land, do you, what you ask for it? A. Yes, sir, I have an idea what I would ask, but whether I could get it or not—Q. How does this land in the neighborhood of Mr. Orr compare with your land?

Mr. Leason: That cannot be done.

The Court: No.

Mr. Patton: Mr. Brown, how often have you passed this house of Samuel Orr?   A. Frequently.   Q. Could you see the buildings from the road?   A. Yes, sir.   Q. Could you see all his buildings?   A. I could see all his buildings.   Q. How much of the real estate could you see as you passed along the road? A. I could see the greater part of it, the greater part of his land. I don't know just exactly his boundary lines.   Q. Were you ever in his house?   A. Never in his house.   Q. Have you been over his land along the line of this pipe line company?   A. I was along the pipe line.   Q. When were you along there? A. I was along there this morning.   Q. Were you along there from one end of the line to the other?   A. Pretty nearly so, there was at the northwestern end of it that come to a pretty

steep piece of woods, the hill is very steep down and I guessed at the distance that was, and looked down, thought I did not like to go down over that—it was a little steep, too rough for me. Q. While going through his land along where this pipe line was would you have a general observation of his farm, see what kind of land it was? A. Yes, sir, I would have a general observation of the biggest part of his land; of course I could not see all of it. Q. Now, could you state from passing and repassing this house and from passing along the line of the pipe this morning and viewing this land, would you be able to state what the value of that land would be per acre?

Mr. Leason: We object to the question as incompetent.

The Court: We will sustain the objection and give you an exception and seal a bill.

The Court: The reason of the exclusion is that the witness having failed to state that he is acquainted with the market value of the lands in the neighborhood. [6]

The court rejected the testimony of P. F. Riggle.

Mr. Neale: We propose to ask the witness this question: That it has been shown in evidence that the land in the neighborhood is valued at from $35.00 to $50.00 an acre, and that the land of Mr. Orr is valued at from $35.00 to $50.00 an acre, and accepting that as a valuation of the land, what amount of damage per acre would Mr. Orr have sustained by the running of the pipe line through his land?

Mr. Leason: That is objected to as incompetent and irrelevant, being testimony based upon other testimony in the case.

The Court: We will sustain the objection and give you an exception and seal a bill. [7]

The court rejected the following offer of evidence of P. F. Riggle.

Mr. Patton: We propose to prove by the witness on the stand that he has made an examination of the Orr farm and of the pipe line running through it, that he has been upon the land, has seen the buildings frequently, and is sufficiently conversant with the selling price of lands in the neighborhood to give an opinion as to the damage sustained to Mr. Orr's land by the appropriation by the pipe line company.

Mr. Leason: The witness having testified in substance when on the stand yesterday that he lived in Burrell township, that

he had not gone through the land in dispute very frequently, that " I do not think that I have a general knowledge of the land in that community," the proposition is objected to as incompetent and irrelevant.

The Court: The witness having been called before and having testified that he did not have a general knowledge of the value of the lands in the neighborhood of the farm of the plaintiff, the objection is sustained and an exception given to the defendant and bill sealed. [8]

The court rejected the following offer of evidence of P. F. Riggle.

Mr. Patton: We now propose to ask the witness if he has a general knowledge of the value of farming land in the county?

Mr. Leason: That is objected to because the witness was interrogated yesterday as to his general knowledge of the value of land in the community in which this property was, and the general knowledge of the value of land in the county is incompetent and irrelevant under the rule laid down by the Supreme Court.

The Court: We will sustain the objection and give you an exception and sealed bill. [9]

Verdict and judgment for plaintiff for $753.05. Defendant appealed.

*Errors assigned* were (1–9) rulings on evidence, reciting same.

*W. D. Patton* and *J. B. Neale*, with them *J. H. Painter*, for appellant.—As to the first assignment of error, cited Wolf v. Wolf, 158 Pa. 621. As to the second assignment of error, cited Michael v. Pipe Line Co., 159 Pa. 99. As to the fifth assignment of error, cited Denniston v. Phila. Co., 161 Pa. 41. As to the ninth assignment of error, cited Railroad Co. v. Reed, 44 L. I. 92; Gorgas v. Railroad Co., 144 Pa. 1.

*M. F. Leason*, with him *J. S. Whitworth*, for appellee.—As to the first assignment of error, cited act of May 29, 1885, P. L. 34. The proposition was to prove the unaccepted offer made by the plaintiff in settlement of damages: Slocum v. Perkins, 3 S. & R. 295; Tryon v. Miller, 1 Wharton, 11; Spence v. Spence, 4 W. 165.

OPINION BY SMITH, J., October 12, 1896:

It is a general rule of evidence that everything said or done by a party to a suit, touching the matter in issue, may be presented in evidence against him. One exception to this rule is, that statements and propositions of either party made by way of compromise are excluded, because the policy of the law favors an amicable adjustment of controversies, and, therefore, it protects bona fide negotiations for that purpose. A party may, if he chooses, buy his peace at a sacrifice. But in order to be entitled to the benefit of this exception it must reasonably appear that what is sought to be proven, was said during an attempt at settlement. When the facts are unquestioned, the court may decide whether the offer comes within the exception; when disputed, the jury are to determine this under instructions from the court, and, thereupon, they must consider, or disregard, the subject of the offer, in accordance with their finding, when passing upon the main question: Hart v. Heilner, 3 Rawle, 407; Gordon v. Bowers, 16 Pa. 226; Haynes v. Hunsicker, 26 Pa. 58; De France v. De France, 34 Pa. 385.

If the question put to the plaintiff (the ruling upon which forms the first assignment of error) was directed to what occurred during negotiations for a settlement of damages for the right of way over the plaintiff's property, its exclusion was entirely proper. The act of May 29, 1885, section 10, P. L. 34, provides that: "Prior to any appropriation, the corporation shall attempt to agree with the owner as to the damage properly payable for an easement in his or her property," etc. This enjoins on the corporation the duty of attempting to agree with the owner upon the damages, and extends to the owner an opportunity of adjusting his claim without litigation. While thus engaged both parties should be free to discuss the matter, without restraint, or fear that what then takes place may thereafter be used to their prejudice upon the trial. It seems clear that these negotiations come within the spirit and purpose of the exception, excluding offers of compromise, and are within its protection.

But while it may be that the offer to take a certain sum, as implied in the rejected question, was made by the plaintiff during an effort to settle upon the amount of damages as required by the act of assembly, the fact that this was so nowhere ap-

pears; nor does it arise by implication so as to warrant its deduction by a jury. Though not lucidly stated, it reasonably appears from the offers, that they had reference to a price which was demanded by the plaintiff, apart from any purpose of compromise. Whether that were true or not, was a fact which could not be negatively found by the court in advance, without any testimony on the point. The question was put to the plaintiff himself, and he knew and could have stated whether the price he demanded was asked during an effort to adjust the damages arising from the proposed easement. The fact that the defendant desired a right of way over the plaintiff's land, was not of itself sufficient to bring the offer within the exception referred to. While the law requires that the application for a charter for a natural gas company shall state the general route of its intended line, its location at any given point need not be specified; and it nowhere appears in the evidence that at the time of the alleged offer, or demand, the company had fixed its route over the plaintiff's land, or had projected any definite line for that purpose; nor was it alleged that the statement of the plaintiff took place during an effort to settle the damages as called for by the statute, or was made by way of compromise, or that the plaintiff so understood it. There is nothing disclosed in the circumstances which would justify the exclusion of the question under the established rules of evidence. The mere objection to that effect by counsel, is not sufficient. For the present therefore we must take the offer as true, and hold that it comes within the general rule admitting the statements of parties, and that it was error to reject it: Railroad Company v. Ranck, 78 Pa. 454.

The rules of evidence governing the admission of opinions as to the value of property have been frequently stated by the Supreme Court; they are plain and not difficult of application. In Michael v. Crescent Pipe Line Co., 159 Pa. 104, it was said: " An essential test of the competency of witnesses, called to give an opinion in respect of the market value of land, is that they should affirmatively appear to have actual personal knowledge of the facts affecting the subject-matter of the inquiry: Railway Co. v. Vance, 115 Pa. 325. They cannot intelligently testify without such knowledge ; its possession is a necessary element in the value of such testimony, but cannot be assumed :

the court cannot pass on the question of competency until it be made to appear. Hence the possession and sufficiency of such knowledge should be made to appear and be passed upon by the court before the witness should be permitted to express any opinion. What constitutes sufficient knowledge was thus stated by Mr. Justice CLARK in Railway Co. v. Vance, supra: 'The market value . . . . is estimated upon a fair considera-tion of the land, the extent and condition of its improvements, its quantity and productive qualities, and the uses to which it may reasonably be applied, taken with the general selling price of lands in the neighborhood at the time. The prices which, upon full consideration of the matters stated, the judgment of well informed and reasonable men will approve, may be re-garded as the market value: Railroad Co. v. Patterson, 107 Pa. 464. The general selling price of lands in the neighbor-hood cannot be shown by evidence of particular sales of alleged similar properties; it is a price fixed in the mind of the witness from a knowledge of what lands are generally held at for sale, and at which they are sometimes sold, bona fide, in the neigh-borhood.' " See, to the same effect, McElheny v. Bridge Co., 153 Pa. 108; Mewes v. Pipe Line Co., 170 Pa. 364.

If there have been no sales from which the general selling price might be ascertained, the market value may be deter-mined from the testimony of persons who are acquainted with the property and are able to speak, from their knowledge and experience, as to its value: Curtin v. Railroad Co., 135 Pa. 20.

The basic requirements are personal knowledge of the prop-erty and of its value at the time it is taken.

Measured by these rules the second, third and fourth as-signments of error cannot be sustained. Each of the witnesses testified that he knew the property for many years, and his judg-ment of its value was based on his knowledge of its condition, quality and utility, and of such sales as were made of similar properties in the neighborhood. Nor was there any error in excluding the testimony set out in the sixth assignment. The witness himself stated, and his testimony showed, that he was not acquainted with the value of land in the neighborhood of the Orr farm.

The testimony upon which the seventh assignment is based, shows that the witness had no knowledge of the value of the

Orr farm, or of any part of it, which would warrant the admission of his opinion upon that subject; and it would be novel indeed, to allow a witness, without knowledge of the subject-matter, to testify, hypothetically, concerning it. That would be in direct violation of the principle upon which such testimony is permitted.

The witness, Riggle, had been called and examined in the case. On the next day he was recalled, and it was proposed to re-examine him on matters which he had gone over in his testimony the day before. No reason was given in the offer, or stated by the witness, why he should be again examined on the same subject, and the court refused to permit it. We fail to see any abuse of discretion in this matter, or that any error was committed in disallowing a repetition; the eighth and ninth assignments are therefore overruled.

The fifth assignment of error is based on an objection to a statement by counsel of the plaintiff, made during the examination of a witness. The witness was asked: Q. "What's the difference in your estimate between the value of this farm before the pipe line was laid and the right of way taken, and since?" Instead of replying to this question the witness said: A. "Well, I would like to know what your right of way includes, whether it is just up to the present time?" To which the counsel of the plaintiff replied, "Right of way includes sixteen feet wide, the right to use it for the laying of gas lines, and the time is indefinite; it may run on forever, or it may be restored at the pleasure of the person taking it." Whereupon the witness further inquired, "When they take the width of the pipe out, is it going to be refilled, or left an open ditch?" To which the counsel replied, "We do not know." The witness then said, "That would make it quite a difference of price of it, either with an open ditch, or a well filled ditch." And the counsel said, "They have a right to occupy it forever, if they wish to, or as long as their charter exists, or to abandon it if they please; there is nothing definite on that; and when they abandon it, they can leave it as they please."

At this point counsel of the defendant said: "We object to the last statement made by the counsel, because the bond contemplates leaving the ground in good condition; if there was any negligent condition, that would be a separate remedy."

The court then said: " Let the question be read to the witness, and let him answer as indicated by the question there. We will give you an exception and sealed bill."

In pursuance of this direction by the court, the following question was put to the witness, which is substantially the first question above quoted: Q. "Mr. Culp, what would be the difference in the market value, a fair market value of the land before this pipe line was laid and after?" A. "Well, I would say there would be a difference of anywhere from 900 to a 1,000 dollars."

We are not inclined to sustain this assignment, because the question that was actually put to the witness and answered by him was, in itself, entirely proper, and according to our understanding of what the court said, the witness was directed to " answer as indicated by the question," which, inferentially, would exclude from the answer anything else indicated by the counsel of the plaintiff. We are not to be understood, however, as approving of what took place preceding the answer of the witness; and especially of that which forms the subject of the objection. It was the right of the plaintiff to elicit from the witness, by questions, his knowledge of the matters which might properly form the basis for an estimate of damages; and, under cross-examination, it might be readily ascertained whether, in forming that estimate, the witness had included in it anything improper for consideration in that particular; but the judgment of the witness, as to the damage done, should be based upon his own observation and knowledge of the premises, and not on irrelevant suggestions made to him by counsel while in the witness box. Although it does not appear that what was said influenced the answer of the witness, yet in view of its having been mentioned for that purpose, the court might very properly have cautioned the witness to base his answer on his own knowledge rather than upon the suggestions by counsel of matters not proper for consideration. The damages recoverable in an action of this kind, are based upon, and have reference to, the conditions existing at the time of the location and construction of the pipe line, and its effect on the plaintiff's property, and not upon an apprehension of injury from subsequent occurrences. Whether a pipe line company may after-

ward damage the property in removing the pipe, is wholly beyond the present inquiry. The fifth assignment is overruled.

All the assignments of error, except the first, are overruled; for the reasons given that assignment is sustained, the judgment is reversed, and a venire facias de novo awarded.