# Samuel C. Grier *v.* The Borough of Homestead, Appellant.

*Municipal law—Evidence—Proof of ordinance—Burden of proof.*

It is not necessary to prove the preliminary steps taken in passing and publishing a municipal ordinance, the ordinance book is prima facie evidence of the validity of the ordinance, and if anything essential to its validity has been omitted in passing or publishing it, it devolves upon the party resisting it to show such invalidity.

*Practice, Superior Court—Defective assignment of error—Rule XVII.*

Defective assignments of error which are in direct violation of Rule XVII of the Superior Court will not be considered.

*Evidence—Road law—Measure of damages.*

A witness in a land damage case must give his estimate of the money value of the injury, by contrasting the market value of the property, as it was before the injury was inflicted, with its value immediately after the injury; and the jury should be instructed that the difference in these values is the measure of damage.

*Land damage cases—Evidence—Competency of witness.*

In land damage cases the positive requirements for a competent witness are: personal knowledge of the property and of its market value at the time it was taken. In order that a witness may be competent to testify intelligently as to the market value of the land he should have some special opportunity for observation; he should in a general way and to a reasonable extent have in his mind the data from which a proper estimate of the value could be made.

*Appeals—Evidence—Effect of admission of incompetent testimony.*

The fact that sufficient competent testimony was admitted on the trial to sustain the verdict, is no antidote for the error of admitting incompetent testimony, since an appellate court cannot determine either the effect given by the jury to that which should not have been before them, or whether the verdict was not due wholly to the incompetent testimony.

Argued April 13, 1897.    Appeal, No. 32, April T., 1897, by defendant, from judgment of C. P. No. 3, Allegheny Co., Aug. T., 1895, No. 129, on verdict for plaintiff.    Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ.    Reversed.

Appeal from report of road viewers.

On January 19, 1891, the borough of Homestead by ordinance established the grade of Dickson street.    Shortly after

that time Levi Myers then the owner of the lots in question, erected thereon six tenement houses forming one building. December 31, 1891, the property was conveyed to Samuel C. Grier, plaintiff in this case.

In pursuance of a subsequent ordinance Dickson street in front of the property in question, was brought to a grade established by ordinance of January 19, 1891. On petition of plaintiff viewers were appointed to assess the damages and benefits on abutting properties.

On the trial of the case counsel for the borough of Homestead offered in evidence the ordinance of the borough of January 19, 1891, to show a formal change of grade prior to the erection of plaintiff's improvements on the lot in question. This was objected to because the ordinance included more than one street, and because the offer did not include proof of publication by handbills or newspapers as required by law. The objection was sustained.

The court admitted under objection and exception the testimony of several witnesses as to values, whose preliminary examination showed that they had no special knowledge on the subject.

Verdict and judgment for plaintiff for $1,000. Defendant appealed.

*Errors assigned* were (1) Sustaining plaintiff's objection to defendant's offer to prove that the grade was established on Dickson street on January 19, 1891, and that that was prior to the time the houses were erected, the offer, objection and ruling being as follows: "H. J. O'Donnell, a witness for defendant, being the borough clerk, and having identified the borough ordinance book was interrogated as follows: Mr. Silveus: I wish to prove that the grade was established on Dickson street on January 19, 1891. I will prove by other witnesses that that was prior to the time that these houses were erected and that, therefore, the plaintiff is not entitled to recover for the change of grade any damages caused to the improvements that were on the lot. Mr. Dahlinger: I object to the offer of this ordinance, because it is an ordinance establishing the grade of Second, Third, Fourth and Fifth avenues extension city farm line, and Dickson street extension and Plummer street; it is not an ordi-

nance fixing the grade of Dickson street. I object further, because it includes the proceedings of eight streets in one ordinance, and further, that the offer does not include the proof of publication by handbill and in the newspapers as required by law. Objection sustained. To which ruling of the court counsel for defendant requests an exception. Exception allowed and bill sealed." (2) The court erred in overruling the objection to the testimony of Samuel C. Grier, a witness for plaintiff, the offer and ruling being as follows: "Mr. Dahlinger: I propose to call Mr. Grier to corroborate the evidence that we have put in as to the damage sustained by these houses. I offer to prove by Mr. Grier the actual amount of loss sustained by the grading of this street to this property. ᛏ The Court: Although he does not know the market value either before or after? Mr. Dahlinger: Although he does not know the market value of property in the neighborhood at that time. The Court: He has not even testified that he knows the market value of this property either before or after? Mr. Dahlinger: He knows what he paid for it. The Court: The witness admitting that he does not know the market value of property in the neighborhood including the property about which the controversy arises, it is proposed to ask him what extent it was damaged. He has already been permitted to testify that in his opinion it is damaged; this on the authority of Dawson's Appeal. We are not certain whether the ruling as to Mawhinney's testimony on Dawson's Appeal goes to the extent in a case of this sort of permitting the witness to fix figures when he admits that he does not know the market value either before or after; but we will err, if at all, on the side of liberality in admitting the testimony, and on the authority of the ruling with respect to Mawhinney in Dawson's Appeal overrule the objection and seal a bill for the defendant. Mr. Dahlinger: Now, Mr. Grier, state in your opinion the difference before and after the grading of this street as to this property." (3) In admitting the testimony of Robert J. Coyle, a witness for plaintiff, the questions, objections and ruling being as follows: "The Court: Q. Do you know anything about the value of property in that neighborhood? A. I don't know the value per foot of the ground. Q. You persist in not answering the question that is asked? A. I can't answer it because I don't know the value of the ground right

there. Mr. Dahlinger: Q. Do you know the value of property in that immediate neighborhood in a general way? A. In a general way I could, but if you would ask me point blank what those two lots are worth I could not tell you. Q. Well, just answer that question. A. Well, in a general way, I would know the value, yes, sir. Mr. Silveus: Q. How do you get that knowledge? A. Why from the general knowledge of the real estate business. Defendant renews the objection that the witness is not qualified to testify as an expert in a case of this kind. Q. I will ask you now Mr. Coyle if in your opinion that property is benefited or damaged by the grading of Dickson street? A. I think it was damaged. Q. To what extent? Objected to. Q. I will change the form of the question, what is the difference, in your opinion, between the value of the property before and after the grading? Objected to. Objection overruled. To which ruling of the court counsel for defendant requests an exception. Exception allowed and bill sealed." (4) In admitting the testimony of John G. Hastings, a witness for plaintiff, the questions, objections and ruling being as follows: "Q. What in your opinion was the difference between the market value before and after the grading? Objected to. Cross-examined by defendant: Q. Did you ever deal in real estate at all? A. No, sir. Q. Do you know anything at all about the value of real estate in Homestead? A. No, sir. Q. And the only thing you do know is by observing on this street since the grading was done, how much it is cut down in front? A. In regard to these houses, yes, sir, I went up for that purpose. Defendant renews the objection to the witness answering the question that was asked him. The Court: I make the same ruling as in the case of the last witness. The ruling as to the Mawhinney testimony may have broad enough meaning to cover this. The objection is overruled and a bill sealed for the defendant." (5) In overruling defendant's objection to the testimony of John G. Hastings, a witness for plaintiff, the questions, objection and ruling being as follows: "Do you mean it was worth less or more? A. It was worth $1,500 less. Q. Now, how do you arrive at that? A. Why I went up there and estimated, looked over the buildings and received a bid for the lowering of the house. Objected to as hearsay. Q. Did you make an estimate yourself? A. I gave Mr. Grier an estimate

of what would put that property in the same condition it was before lowering it down to the grade of the street, the same as it was before the street was graded.   I gave Mr. Grier an estimate of between $1,500 and $1,600.   Q. Well, have you that estimate?   A. I have a memorandum of it, I just figured it up at the time.   Q. State what the items are?   A. 12 cellar frames sash $48.00.   That would necessitate putting in new cellar frame there.   We would have to tear the whole wall out.   Objected to.   Objection overruled.   To which ruling of the court counsel for defendant requested an exception.   Exception allowed and bill sealed."

*John F. Cox*, with him *J. G. Silveus*, for appellant.—The manner of proving records of boroughs in this state is regulated by statute.   See Act of April 1, 1834, P. L. 163.

A municipal corporation is not required to prove every antecedent act requisite to the legal passage of an ordinance: Becker v. Washington, 7 S. W. Rep. 291.   To like effect see Town of Tipton v. Norman, 72 Mo. 380; Lindsay v. Chicago, 115 Ill. 120.

In order that a witness may be competent to testify intelligently to the market value of land he should have some special opportunity for observation; he should in a general way have in his mind data from which a proper estimate of value ought to be made : Railway Co. v. Vance, 115 Pa. 325.   See also Chambers v. South Chester Borough, 140 Pa. 510; Phila. & Del. County R. R. Co., 174 Pa. 291.

The testimony given by Coyle was a mere opinion, and the same rule would apply as already laid down by Mr. Justice Clark in Railway Co. v. McCloskey, 110 Pa. 436.

These questions seem, however, to have been settled by the decision of this court in Orr v. Gas Co., 2 Pa. Superior Ct. 401.

*Chas. W. Dahlinger*, for appellee.—The text books and decisions are unanimous in holding that "when ordinances are required to be published before they go into effect, this requirement is essential, and the publication must be in the designated mode :" Dillon on Municipal Corporations, sec. 331; 17 Am. & Eng. Ency. of Law, 262; 4 Wait's Actions and Defenses, page 610. See also Taylor Avenue, 146 Pa. 638.

There is no presumption in favor of the legality of municipal ordinances : Altoona v. Bowman, 171 Pa. 307.

The other four assignments of error relating to the admission of evidence of Samuel C. Grier and others are not properly assigned in that they do not show the testimony adduced. These errors are evidently intended to be assigned under Rule XVII. of the Superior Court, and in no case is the answer of the witness given to whose testimony objection was made. This point is no longer in doubt, and the assignments cannot be regarded: Com. v. Smith, 2 Pa. Superior Ct. 474; Battles v. Sliney, 126 Pa. 460.

OPINION BY ORLADY, J., February 19, 1898:

Under proceedings instituted by the borough, the plaintiff recovered a verdict of $1,000, as damages sustained in changing the grade of Dickson street. On the trial below it was urged in defense to the claim for damages, that the grade had been established by an ordinance at a time prior to the erection of the buildings on the lots of the plaintiff, and in support of this contention, the borough clerk was called by the defendant and produced the ordinance book of the borough. The ordinance of January 19, 1891, on which the defendant relied was offered in evidence, and to this the plaintiff objected. " I object to the offer of this ordinance, because it is an ordinance establishing the grade of second, third, fourth and fifth avenues extension city farm line, and Dixon street extension and Plummer street; it is not an ordinance fixing the grade of Dixon street. I object further, because it includes the proceedings of eight streets in one ordinance ; and further, that the offer does not include the proof of publication by hand bill and in newspapers as required by law." The objection was sustained, (1st assignment) but as the ordinance is not on the record sent to this court we only dispose of that part of the assignment which suggests the necessity of proof of publication of the ordinance, by handbills and in the newspapers, before receiving it in evidence.

By the Act of April 3, 1851, P. L. 320, sec. 3, par. IV., it is made a corporate duty " to publish in at least one newspaper if such be printed in the proper county, and by not less than twelve advertisements to be put up in the most public places in

the borough, every enactment, regulation, ordinance or other general law at least ten days before the same shall take effect;" and by the preceding paragraph "to make full records of their proceedings and to provide for the preservation thereof."

By the eighth section of the act the secretary is required "to attend all the meetings of the corporation, keep full minutes of their proceedings, transcribe the by-laws, rules, regulations and ordinances adopted into a book kept for the purpose ; and when signed by the presiding officer shall attest the same, preserve the records and documents of the corporation . . . . record the publication of all enactments and attest the same by his signature thereto." The offer as made, was unaccompanied by proof of publication, and though the ordinance was not operative until the terms of the act of assembly had been complied with, the only question raised by this assignment is, can the ordinance be received in evidence without the fact of publication being first affirmatively shown?

By the Act of April 15, 1834, P. L. 537, it is made the duty of the town clerk "to provide a suitable book or books, for the purpose of entering therein all matters of which he shall by law be required to keep a record" and by section 9 of the act of 1851 these duties devolve upon the secretary of the borough council. When ordinances are required to be published before they go into effect, this requirement is essential, and the publication must be in the designated mode: Dillon on Mun. Corp. sec. 331.

The posting by advertisements and publications in a newspaper are as essential to the validity of an ordinance as are the other statutory requisites: Sower v. Phila., 35 Pa. 231 ; Kepner v. Com., 40 Pa. 124 ; Marshall v. Mayor, 59 Pa. 455 ; Fuller v. Scranton, 2 Cent. Repr. 788.

The ordinance book is required to be kept, by the express direction of the statute, and the memorial made in compliance with the statute is a public record, and when the proper person presents the proper record in which the ordinance is identified and attested, it is prima facie correct and entitled to be read in evidence : Wharton on Evidence, sec. 644 ; Thompson v. Chase, 2 Grant Cases, 367.

The records of a school board though not required by law to be kept are admissible, and when defective are explainable by parol evidence : Gearhart v. Dixon, 1 Pa. 224.

It was not necessary to prove the preliminary steps taken in passing and publishing the ordinance, as it is well held that the ordinance book is prima facie evidence of the validity of the ordinance, and if anything essential to its validity has been omitted in passing or publishing it, it devolves upon the party resisting it to show such invalidity : Prell v. McDonald, 7 Kan. 426, s. c. 12 Am. Reps. 423 ; City of Atchison v. King, 9 Kan. 550.

To hold otherwise, would make it necessary to prove that the advertisements were of the statutory number, or that the posting places were the most public in the borough ; but while admissible as an ordinance, it is subject to attack, and proof may be adduced to show that it was not legally published and posted, and hence was inoperative.

The first assignment of error is sustained.   The second and third assignments are not considered, as they are in direct violation of Rule 17 of this court; the answer of the witness not being given, we repeat what was said in Commonwealth v. Smith, 2 Pa. Superior Ct., 474, " The reasons for this rule and the importance of it are so clearly shown in Battles v. Sliney, 126 Pa. 460, that we need only to refer to that case." The fourth and fifth assignments are considered together.   A witness, John G. Hastings, a contractor, when questioned as to the amount of damages to which the plaintiff was entitled, testified as follows : "Q. Do you know anything at all about the value of this real estate in Homestead ?   A. No, sir.   Q. And the only thing you do know is by observing on this street since the grading was done how much it was cut down ?   A. In regard to the house, I went up for that purpose."

From his evidence, it appears that he had no knowledge of the condition of the property before the grade of the street was changed, nor did he have any knowledge of the value of real estate in the borough ; but as a contractor, he simply visited the premises after the changes had been made and estimated the cost necessary to lower the house and make it conform to the new grade.   He was not called as an expert, and if his testimony had been confined to the facts of which he had knowledge, it would have been competent, but he knew nothing of the conditions existing before the grade was changed, and could not testify as to the damage resulting from a change of which he admitted he did not have any knowledge.

The testimony was received under authority of Dawson v. Pittsburgh, 159 Pa. 317, but we do not think the evidence competent under that case.

Experience has constantly demonstrated the correctness of the old rule established in the case of Schuylkill Nav. Co. v. Thoburn, 7 S. & R. 411, to wit, the jury are to consider the matter just as if they were called on to value the injury at the moment when compensation could be first demanded; they are to value the property, without reference to the person of the owner, or the actual state of his business, and in doing that, the only safe rule is to inquire: What would the property, unaffected by the obstruction, have sold for at the time the injury was committed? What would it have sold for as affected by the injury? The difference is "the true measure of compensation" is the language of the Supreme Court in Chambers v. South Chester Borough, 140 Pa. 510, and in determining the duty of the jury. The same case is as definite authority for the measure of proof and qualification of a witness, in the following concise direction: "More and more closely, in recent years, we have held parties to the rule that, after all things are considered which may affect the mind of the witness he must give his estimate of the money value of the injury, by contrasting the market value of the property, as it was before the injury was inflicted, with its value immediately after the injury; and the jury is instructed that the difference of these values is the measure of damage."

This plain and just rule is the result of many preceding cases noted in that decision, and it has been followed without modification. In P. V. & C. Ry. Co. v. Vance, 115 Pa. 325, it is said: "In order, therefore, that a witness may be competent to testify intelligently as to the market value of land, he should have some special opportunity for observation; he should, in a general way, and to a reasonable extent, have in his mind the data from which a proper estimate of value ought to be made; if interrogated, he should be able to disclose sufficient actual knowledge of the subject to indicate that he is in a condition to know what he proposes to state, and to enable the jury to judge of the probable proximate accuracy of his conclusions;" which test of competency is held to be vital in Michael v. Crescent Pipe Line Co., 159 Pa. 99. He cannot intelligently tes-

tify without such knowledge; its possession is a necessary element in the value of such testimony, but cannot be assumed; the court cannot pass on the question of competency until it is made to appear. Hence the possession and sufficiency of such knowledge should be made to appear and be passed upon by the court before the witness should be permitted to express any opinion. The basic requirements are personal knowledge of the property and of its value at the time it is taken: Orr v. Gas Co., 2 Pa. Superior Ct. 401. While these rules have been varied in instances of limited or special knowledge of particular property, the Supreme Court has held that it is safest rigidly to adhere to the principles announced in the cases cited, this being the only fair and safe way to ascertain the actual damage sustained.

The witness, Hastings, did not pretend to have any knowledge of the property; any idea of its market value; the uses to which it was put; its extent or character; its surroundings or advantages before the change was made; and he could not aid the jury in the least by his estimate of the damages the plaintiff sustained, by giving his opinion " of the difference between the market value before and after the grade."

A stranger from a distant state, who saw the property, for the first time on the day of trial, could testify to the same facts. A verdict to be respected must have a firmer foundation.

The fact that sufficient competent testimony was admitted on the trial to sustain the verdict, is no antidote for the error of admitting incompetent testimony, since an appellate court cannot determine either the effect given by the jury to that which should not have been before them, or whether the verdict was not due wholly to the incompetent testimony.

The first, fourth and fifth assignments of error are sustained, the judgment is reversed, and a venire facias de novo awarded.