Huntingdon Borough et al. *v.* Huntingdon Water Supply Company, Appellant, et al.

*Municipalities—Contracts—Water companies — Taking over of water plants—Construction—Equity—Ordinances—Waiver of objection by acts—Failure to transcribe—Validity—Ministerial acts —Specific performance—Public Service Commission.*

1. Where a contract between a borough and a water company, executed pursuant to an ordinance and in accordance with its terms, provides that at the expiration of ten years the borough shall have the right to purchase the water works at a price that may be mutually agreed upon between the parties, and, if they fail to agree upon a price and terms, a board of arbitrators shall be appointed to determine the value of the works, the company and the borough each to choose two of the arbitrators and these four to choose a fifth, a subsequent ordinance of the borough selecting two arbitrators for the purpose of appraising and valuing the plant is ministerial in character and is valid although not transcribed in the ordinance book.

2. Where, after the enactment of such ordinance, a request was made upon the water company for a price at which it would sell its plant to the borough, and the company made no objection to the ordinance, but submitted a figure at which it would sell, such action, in effect, conceded that the demand for the arbitrators had been legally authorized by the ordinance, and, it seems, operated to waive its right to attack the validity of the ordinance in that respect.

3. In a suit in equity brought by the borough in such case to compel the water company to appoint arbitrators as required by the contract, where it appeared that the defendant offered to sell its plant at a price which was refused by the borough council, the contention that the borough made no effort to agree with the company upon a price and was under a duty to continue negotiations toward that end, was without merit; a finding that the parties had not been able to agree was justified by the evidence, and the relief prayed for was properly granted.

4. In such case the contention that the water company was not required to appoint arbitrators until the borough had secured the permission of the Public Service Commission for the acquisition of the plant was without merit, where the contract provided that it was optional with the borough whether to purchase after the price had been declared by the arbitrators, and it appeared that the borough had not elected to take over the plant.

Mr. Justice MOSCHZISKER dissents.

Argued April 16, 1917. Appeal, No. 137, Jan. T., 1916, by The Huntingdon Water Supply Company, from decree of C. P. Huntingdon Co., May T., 1915, No. 213, in Equity, directing the Borough to appoint arbitrators, in case of The Burgesses and Town Council of the Borough of Huntingdon, in the County of Huntingdon; A. S. Mullin, President of Council; J. C. Hall, J. G. Dell, A. A. Bollinger, B. H. Shaffer, J. W. Snyder, D. M. Stewart, W. C. Wilson, Frank Willoughby, L. R. Brown, S. H. Foster and John Steel, Members of Town Council, Plaintiffs, v. The Huntingdon Water Supply Company, a Corporation; J. D. Stocker, Frank R. Stocker, Albert K. Walker, Frank Lynch, Chas. H. Wells, Geo. G. Brooks, Directors of The Huntingdon Water Supply Company, Defendants. Before BROWN, C. J., MESTREZAT, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Bill in equity for specific performance. Before JOHNSON, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

The court awarded the relief prayed for. Defendant appealed.

*Errors assigned* were in dismissing exceptions to various findings of fact and conclusions of law and the decree of the court.

*John G. Johnson* and *Samuel I. Spyker,* with them *John D. Dorris,* for appellant.—The ordinance of April 8, 1915, was not a valid ordinance upon the 26th day of April, 1915, the date when the said borough requested the water company to appoint its arbitrators, because the ordinance had never been transcribed: Cessna v. Clouse, 52 Pa. Superior Ct. 442; Ulrich v. Coaldale Borough, 53 Pa. Superior Ct. 246; Cox et al. v. Connellsville Boro., 22 Pa. C. C. 657; Lansford v. Lutz, 11 Pa. D. R. 411; Carpenter v. Yeadon Borough, 208 Pa. 396.

The borough made no effort to agree with the water company upon the price at which the water plant should be purchased.

The court is without jurisdiction to entertain this proceeding because the matter of taking over the water plant had not been approved by the Public Service Commission, as required by the Public Service Company Law: Reynoldsville Borough v. Reynoldsville Water Co., 247 Pa. 26; New Brighton Boro. v. New Brighton Water & Beaver Valley Water Co., 247 Pa. 232.

*W. M. Henderson,* with him *H. W. Petrikin* and *H. H. Waite,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, May 22, 1917:

This is an appeal by the defendant, the Huntingdon Water Supply Company, from a decree directing it to select two arbitrators to join with two arbitrators selected by the plaintiff, the Borough of Huntingdon, in the selection of a fifth arbitrator for the purpose of appraising the value of defendant's water plant with a view to its purchase by the borough as provided by the ordinance and contract of May 5, 1885.

Peter Herdic and certain other persons with whom he

was associated, thereafter to be incorporated as the Huntingdon Water Company, Ltd., desired to construct in the Borough of Huntingdon, water works for the purpose of supplying the borough and its inhabitants with water, and, on May 5, 1885, the borough passed an ordinance consenting to and authorizing Herdic and his associates to install and maintain a water plant and system upon the conditions set forth in the contract in writing made on the same day between Herdic and the borough. The ordinance and contract contained the following provision: "At the end of ten years the borough shall have the right to purchase the water works, with all their franchises, rights and property, at a price that may be mutually agreed upon. Should the parties fail to agree on a price and terms, a board of arbitrators shall be appointed to determine the value of the water works and on the value being declared, the borough shall pay the same, but the borough may decline to make the purchase after the value shall have been declared, provided she shall and will pay the expense of said arbitration. If no sale be consummated the contract and right and franchise shall continue to the said Peter Herdic, his heirs and assigns, or to said company, its successors or assigns, until final purchase, but the right to buy shall enure to the borough every ten years, but the borough shall in every case give twelve months' notice of their intention to purchase. In case of sale, the borough shall assume any liability of the company for water works then existing and the same shall be deducted from the price, as part payment thereof. The proposed corporation, or Herdic, his heirs or assigns, if unincorporated, and the borough shall each choose two of the aforesaid arbitrators, and these four shall choose a fifth, all to be nonresidents of the County of Huntingdon, and disinterested persons, two of whom shall be well known and reputable hydraulic engineers."

The rights of Peter Herdic under the above contract were immediately assigned to the Huntingdon Water

Company, Ltd., which constructed and operated the plant until October 15, 1900, when its rights were assigned to the Huntingdon Water Supply Company, the defendant.

The borough council passed a resolution, September 2, 1913, directing that defendant be notified that the borough desired to exercise the right to purchase, given it under the contract of 1885, at the end of the ten-year period, expiring May 5, 1915, and such notice was served on defendant on October 25, 1913. On April 6, 1915, the council passed an ordinance, approved April 8, 1915, and transcribed into the ordinance book May 10, 1915, authorizing the president and secretary of the council to enter into a contract to purchase defendant's plant and system at such price as might be mutually agreed upon between them, provided such purchase-price should be approved by the council, and provided further that if a purchase-price should not be agreed upon and approved by the council, then the council should select two arbitrators for the purpose of appraising and valuing the plant according to the contract of May 5, 1885, and authorizing the service of notice upon the defendant company of such selection, and requiring defendant within ten days thereafter to select its two arbitrators and certify the selection of the same to the council with designation of the time of meeting of the four arbitrators to choose the fifth arbitrator. The ordinance also provided the means for payment to the water company of the purchase-price in case the borough elected to purchase its plant and system. Pursuant to this ordinance, the borough, April 10, 1915, made a demand upon the defendant to name a price for which it would be willing to sell its plant. The secretary of the defendant company replied to this demand that, by a resolution of the directors of the company, the latter would sell to the borough its franchises, rights and property for $220,000 in cash. This offer was declined and rejected by the unanimous vote of the borough council. The council then, April

24, 1915, adopted a resolution selecting two arbitrators, as provided in the contract of 1885, and notified the defendant to select two others within ten days and designate a time of meeting of the four to make a selection of the fifth. The defendant refused to appoint arbitrators, and thereupon the plaintiff filed this bill which resulted in a decree against the defendant company, from which this appeal was taken.

The several assignments of error are considered by the appellant under the following propositions, as the questions involved in the case: The ordinance of April 8, 1915, was not a valid ordinance on April 26, 1915, the date when the borough requested the defendant water company to appoint appraisers; the borough made no effort to agree with the water company upon a price at which the water plant should be purchased; and the court did not have jurisdiction in a proceeding to take over a water plant or system, before the approval of the Public Service Commission had been obtained.

It will be observed that the ordinance of April 8, 1915, had not been transcribed on April 26, 1915, when the borough demanded that the defendant appoint its arbitrators under the ordinance and agreement of May 5, 1885. It is, therefore, contended that for this reason the action of the borough in making the demand was without authority. This contention overlooks the fact that the demand for the appointment of arbitrators was only one of the preliminary steps to be taken by the borough in securing such information and data as were necessary in order to enable the borough council to finally decide whether it desired to purchase or not to purchase the defendant's plant. It did not necessarily involve taking over the plant by the borough; that was a matter for further consideration and determination by the borough authorities. The borough had previously given the twelve months' notice of its intention to purchase, as required by the contract and ordinance of May 5, 1885. The parties, as found by the court, failed to agree upon

a price and terms for the purchase of the plant, and, as required by that ordinance and contract, the next preliminary step to the purchase of the plant was the giving of notice for the appointment of arbitrators. It is not clear that any ordinance or resolution of council was necessary to authorize the president and secretary of the council to make this demand. It was authorized by the ordinance and contract of 1885, and, at the expiration of the ten-year period, the proper borough officials in giving the notice would be simply carrying out the authority conferred by the franchise ordinance and contract of 1885. If, however, an ordinance or resolution was required as further authority by the borough officials to make the demand of the defendant for the appointment of its arbitrators, such ordinance or resolution would be the exercise of a ministerial and not a legislative or governmental function on the part of the council, and, hence, the ordinance or resolution would not be required to be transcribed in the ordinance book to give it validity in authorizing the demand for the appointment of the arbitrators: Schenck, Howard & Gallagher v. Burgess, Town Council, Borough of Olyphant & Massey, 181 Pa. 191; Seitzinger v. Borough of Tamaqua & Edison Electric Illuminating Co. of Tamaqua, 187 Pa. 539; Kolb v. Tamaqua Borough, 218 Pa. 126. The ordinance and contract of 1885 specifically provide the several steps to be taken before the purchase of the water plant by the borough, and, therefore, fully authorized at least the preliminary steps to be taken prior to the determination by the borough to take over the water plant. The demand for the appointment of arbitrators on the part of the defendant was simply a ministerial act, authorized by the original franchise ordinance and contract, and such demand might have been ordered to be made by a motion or resolution which, under the settled law of this State, is not required to be transcribed into the ordinance book. It is true that the ordinance of April 8, 1915, after authorizing the service

of notice on the water company requiring it to choose arbitrators, as provided in the contract of 1885, empowers the president and secretary of the council to enter into an agreement for the purchase of the defendant's plant in the event the council elected to make such purchase, and also designates the manner in which the money for paying the price should be provided. But, we are not concerned here with any part of the ordinance except that which authorizes notice requiring the defendant to choose its arbitrators. The legality of the ordinance for any other purpose may be tested when the question arises in an effort to enforce the ordinance for the other purposes for which it was enacted. It may, however, be suggested in passing that the ordinance has been transcribed and advertised, and is, therefore, now effective for legislative purposes under Section 3 of the Act of May 23, 1893, P. L. 113.

It may well be doubted whether the defendant by its conduct did not waive its right to attack the validity of the ordinance so far as it relates to the demand for the appointment of arbitrators. After the enactment of the ordinance, a request was made upon the defendant for a price at which it would sell its plant to the borough. The defendant company did not then make any objection to the ordinance, but its board of directors met and passed a resolution fixing the price at which it would sell its plant, and this price was communicated to the borough. This action on the part of the defendant was in compliance with the stipulations of the contract of 1885, and, in effect, conceded that the demand for the appointment of arbitrators had been legally authorized by the ordinance of April 8, 1915.

The learned counsel for the defendant company contend that the borough made no effort to agree with the company upon a price at which the water plant should be purchased, as required by the contract of May 5, 1885. The court found that "the plaintiff and defendant have not been able to agree upon a sum or price at which the

defendant would be willing to sell, and at which the plaintiff would be willing to purchase the defendant's plant and system." We think this finding is sustained by the evidence. Pursuant to a resolution of the borough council, the defendant was requested to name "a price for which you are willing to sell the Huntingdon Water Supply Company's plant, system and property, to the said Borough of Huntingdon." In reply to this request, the defendant company, by proper corporate action, offered to sell its plant for $220,000, and so notified the borough council. The offer was unanimously rejected by the council. No further effort was made by either party to agree upon a price for the water plant. It will be observed that each party was acting in its corporate capacity, the request being made by the borough council, and the price for the plant fixed by the defendant's board of directors. The contract of 1885 requiring the parties to make an attempt to agree upon a price does not stipulate as to the extent to which the negotiations shall be made to fix the price. We do not see that the borough was required to continue further negotiations and suggest a price after it had received notice of the price fixed by the defendant's board of directors. The borough was justified in concluding that the defendant would not sell its plant for a less sum than that already named, and that further negotiations would be fruitless. It is idle to expect the two corporate bodies to act as individuals might act in negotiating for the purchase and sale of the plant. There is nothing in the record to show that, had the negotiations proceeded on the part of the borough, the defendant would have accepted any less sum than that named in the resolution passed by its board of directors and communicated to and promptly rejected by the borough. If, however, the defendant company was willing to sell its plant for a less sum than it had already named, it should have communicated the fact to the borough. The duty to continue further negotiations in an attempt to fix a price for the

water plant was as obligatory upon the defendant as upon the borough: Snodgrass v. Gavit, 28 Pa. 221. The obligation was mutual, and, if the defendant company had concluded to accept a less sum than that named in its offer, it should have communicated the fact to the borough, and, failing to do so, it is not in a position to successfully claim that the borough made no effort to agree with the water company upon a price at which the latter would sell its plant. The fact that the defendant company did not receive notice from the borough that the price suggested was acceptable to the latter was notice to the defendant that the price had been rejected, and afforded the defendant an opportunity, if it desired, to name another price at which it would sell its plant.

The third and last question raised by the defendant is as to the right of the borough to enforce the provisions of the ordinance and contract of 1885 without first applying to, and obtaining the consent of, the Public Service Commission under the Act of July 26, 1913, P. L. 1374. The learned court below held that the borough was not required to secure the approval by the commission of its proposed purchase until after the value of the plant and system was ascertained and it elected to purchase the same, according to the provisions of the ordinance and agreement of May 5, 1885. This is clearly right. This is not a proceeding to condemn or acquire the water plant; the purpose is simply to have legally determined the value of the plant so that the borough can decide whether or not it will purchase. The Public Service Commission, therefore, has no interest in these proceedings, nor is jurisdiction given it to interfere in any way with them. If the borough had elected to purchase and was proceeding, under the contract, to acquire the water plant, the question whether it should first secure the approval of the commission would require adjudication.

The appellant has cited certain authorities to sustain its contention that the borough must obtain the approval of the Public Service Commission before it takes the pre-

liminary steps, under its contract, to determine whether or not it will purchase the defendant's water plant. It is sufficient to say that they have no application whatever to the facts of this case. As already pointed out, the borough has not yet elected to purchase the plant, nor was this proceeding instituted for the purpose of acquiring it. After the value of the plant has been ascertained, the borough will then determine what it will do in the premises.

The decree is affirmed.

Mr. Justice MOSCHZISKER dissents.