"Katherine W. Duncan, a resident of the City of McKeesport, County of Allegheny, died April 2, 1917. By her last will she devised and bequeathed the residue of her estate to her executor in trust, to pay the net proceeds thereof to her sister, Elizabeth M. Jones, during her life, and upon the death of this sister the executor was directed to convert the residuary estate into money and dispose of it as follows:
" 'I order and direct that the sum of Ten thousand dollars ($10,000), together with any interest that may have accumulated thereon after the death of my said sister, be paid over to the City of McKeesport, upon the following terms and conditions, for the following uses and purposes, provided said City, by proper councilmanic action within two years from the date of the death of my said sister, accepts said bequest and applies the same toward the purchase of a public park, to be known and dedicated as the Archie Duncan Memorial Park. The price and location of said park to be approved by a majority of the following committee: Wm. A. Cornelius, Manager of the National Tube Company or his successor; Augustus M. Saunders, Superintendent of the National Tube Company or his successor; George H. Lysle; Wm. D. Mansfield and Wm. E. Newlin. In case any of the above committee should die before the selection of said park, or refuse to serve, their place or places shall be filled by a majority vote of the remaining members of said committee, except as hereinbefore provided. In case said City does not accept said bequest as aforesaid, then I order and direct that the corpus of said fund, together with all accumulations of interest thereon shall be paid as hereinafter directed.'
"Following the audit of the first and final account of the trustee, a decree was entered, in which was incorporated the following: 'Distribution of the following amt. with whatever accumulated interest may accrue on same suspended until November 2, 1936, pending action *Page 243 
by the City of McKeesport under terms conditions set forth in Will, legacy, $10,000.'
"On December 1, 1934, the trustee in writing advised George H. Lysle, Mayor of the City of McKeesport, that Elizabeth M. Jones had died November 9, 1934, called attention to the gift to the City of McKeesport to establish the park and asked that the matter be brought before the City Council for appropriate action.
"The City of McKeesport now asks that the suspended amount above mentioned be distributed to it for the establishment of the park provided in the will of decedent. The trustee and residuary heirs of Katherine W. Duncan oppose the request on the ground that the City has not complied with the terms of the will by proper councilmanic action and that the price and location of the real estate selected for the park have not been approved by a majority of the committee named in the will for that purpose.
"It is admitted that on December 1, 1934, the Council of the City of McKeesport passed a resolution accepting the gift. On October 24, 1936, the Council adopted a resolution to buy a plot of ground owned by the estate of Gilbert F. Myer, deceased, at a cost of $7,000. On the same day the Council passed a resolution to buy from C. N. Abernethy certain lots, containing approximately 1.08 acres, and to pay therefor $3,000. These two parcels of ground, aggregating 5.82 acres, were to be set apart and dedicated as the Archie Duncan Memorial Park.
"The acceptance of the gift by the Council of the City of McKeesport was a ministerial act. It was not a legislative matter and no notice was required to be given nor was a formal ordinance necessary. It was not an expenditure of the City's money but an acceptance of a gift. The further measures for acquiring the land and the payment therefor will be taken care of by proper councilmanic action. The acceptance of the testatrix's gift not being a governmental or legislative function, the *Page 244 
action of Council was sufficient in form to obtain the gift:Huntingdon Borough et al. v. Huntingdon Water Supply Company,258 Pa. 309.*
"Further objection is made on the ground that the persons composing the committee of approval are not the persons named in the will of Katherine W. Duncan to approve the price and location of the park. Those named in the will are 'Wm. A. Cornelius, Manager of the National Tube Company, or his successor; Augustus M. Saunders, Superintendent of the National Tube Company, or his successor; George H. Lysle; Wm. D. Mansfield and Wm. E. Newlin.' The last named died December 23, 1922. William A. Cornelius resigned and discontinued his position as Manager of the National Tube Company in the year 1928, and since January 1, 1929, has continuously resided in Bethlehem, Pennsylvania, or in Philadelphia, Pennsylvania. His successor as Manager of the National Tube Company is George E. Hitchens, who occupied that position at the time of the selection of the real estate for the park. Augustus M. Saunders died in 1933. George Duncan was appointed to succeed him as Superintendent of the National Tube Company, and on his death, sometime prior to June, 1935, Harry C. Herpel was made Superintendent. Both Mr. Hitchens and Mr. Herpel occupied these respective positions in the National Tube Company when the real estate in question was selected by Council and were of the majority of the committee which approved the price and location. Mr. Newlin was Solicitor for the City of McKeesport at the time of his death. On or about June 8, 1935, Harry M. Jones became City Solicitor and was duly selected as a member of the committee of approval in place of Mr. Newlin. *Page 245 
"The testatrix in designating the committee named William A. Cornelius, Manager of the National Tube Company, or his successor, and Augustus M. Saunders, Superintendent of the National Tube Company, or his successor. The intent was to have the persons occupying those two positions, respectively, serve on the committee. These positions in the Tube Company were of responsible importance and men of the experience and character of those named who lived in the City of McKeesport would be particularly well fitted to discharge the duties and render the service testatrix had in mind. It was clearly the purpose of the testatrix if those two persons were unable to serve that those who succeeded them in the positions should become members of the committee. Mr. Cornelius having removed far from McKeesport and engaged in another business, and Mr. Saunders having died, the expected service could not be rendered. The testatrix provided the manner in which places on the committee should be filled where death had occurred or any of those named refused to serve, namely, by a majority vote of the remaining members, 'except as hereinbefore provided.' This exception shows the testatrix had in mind that the 'remaining members' were not charged with the duty of selecting successors to Cornelius and Saunders, inasmuch as her will provided their places were to be filled by those who succeeded them in the positions in the Tube Company held by them respectively at the time the will was written. The committee and Council were the bodies interested in the matter, and their interpretation of this provision of the will will be regarded as proper. A successor is one who succeeds or follows; 'a person who has been appointed or elected to some office after another person': Bouvier's Law Dictionary; Gillespie v. Iseman, 210 Pa. 1;Fidelity Trust Company v. Travelers Insurance Company, 320 Pa. 161.
"The respondents further aver the amount paid for the above mentioned real estate is greatly in excess of *Page 246 
the value thereof and to consummate the purchase would be a wasteful, extravagant and fraudulent use of the donation and bequest of Mrs. Duncan. It appears the selection of the real estate for the park was considered at several of the Council meetings. Various tracts of land were offered or brought to the attention of Council. At one of the earlier meetings of Council a resolution had been passed to purchase the Myer Estate property for $8,140. Council later became aware that there was not sufficient money coming from the Duncan Estate to pay for the Myer and the Abernethy properties. A reduction was secured from the Myer Estate, and at a meeting of Council on October 24, 1936, a resolution was passed authorizing the purchase of the Myer real estate for $7,000 and repealing the previous action for acquiring the property. On October 24, 1936, four of the committee, being a majority, approved the price and location of the Myer and Abernethy properties.
"The respondents offered no testimony as to the value of the real estate in question. The selection was made by the Council of the City of McKeesport and approved by a majority of the committee as stipulated in the will. The persons constituting the two bodies are representative men of the community and occupy responsible positions. There is no evidence of any collusion or improper conduct in this matter. The presumption is that the members of the Council and approving committee acted with intelligence and fidelity; that the land chosen was suitable and obtained at a fair price; and that their purpose was to carry out the intent of the testatrix in establishing a park as well as to benefit the City of McKeesport and its people. Nothing has been shown to the contrary. To establish fraud it must be proven, and the respondents have failed to sustain that burden.
"The prayer of the petition will be granted and the fund suspended in the hands of the trustee by the decree of May 8, 1935, will be now distributed to the City of McKeesport for the purchase of a public park to be *Page 247 
known and dedicated as the Archie Duncan Memorial Park as provided in the will of this decedent."
The court decreed accordingly.
Trustee and residuary legatees appealed.
Errors assigned, among others, were dismissal of exceptions.
* Jones v. Schuylkill Light, Heat Power Co., 202 Pa. 164,51 A. 762; Lansdowne v. Citizens' E. L. P. Co., 206 Pa. 188,55 A. 919; Wilkes-Barre R. R. Co. v. Kingston Boro., 319 Pa. 471,181 A. 564.